REVISED MARCH 25, 2009

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 24, 2009

Charles R. Fulbruge III
Clerk

No. 08-50038

DENNIS J KUCINICH; KUCINICH FOR PRESIDENT 2008, INC.;
WILLIE NELSON

Plaintiffs-Appellants

v.

TEXAS DEMOCRATIC PARTY; PHIL WILSON, Individually and in his
official capacity as Secretary of State; BOYD L RICHIE

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and OWEN and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Chief Judge:

This appeal addresses the constitutionality of a Texas Democratic Party rule that requires prospective presidential candidates to swear that they will "fully support" the party's presidential nominee, "whoever that shall be," in order to qualify for the primary ballot. Former candidate Dennis Kucinich ("Kucinich") and his supporters urge that the oath is unconstitutionally vague and unduly burdens their respective rights to qualify for the ballot and vote for him as a candidate. The Texas Democratic Party ("TDP") defends its loyalty

oath as a means to protect the associational rights of its members. Like the district court, we find no constitutional infirmity in the oath and affirm its judgment. That we find the oath permissible does not, of course, suggest that it is prudent.

## I.  BACKGROUND

The relevant facts are stipulated and simple. On December 28, 2007, Dennis Kucinich, a candidate for President, submitted an application to TDP to be placed on the March 4, 2008, primary ballot. Under Texas law, subject to minimal restraints, political parties are exclusively permitted to adopt rules that govern the placement of their candidates on the presidential primary ballot. See TEX. ELEC. CODE § 191.002. The Rules of the Texas Democratic Party, which are adopted at the state convention every two years, require each presidential candidate to execute a party loyalty oath. On his signed ballot application, however, Kucinich crossed out the portion of the oath that required him to "swear that I will fully support the Democratic nominee for President whoever that shall be." On January 2, 2008, TDP informed Kucinich that his candidacy would not be certified to the Texas Secretary of State for the presidential primary ballot unless he re-signed the application with the full oath. Kucinich responded that he would only support a nominee who would not employ war as an instrument of foreign policy.

Kucinich, Kucinich for President, Inc., and Willie Nelson immediately filed suit in the district court seeking to temporarily and permanently enjoin TDP from enforcing the oath on the grounds that the oath violated their First and Fourteenth Amendment rights. They asked the court to order the TDP Chairman to certify Kucinich as a candidate and order the Secretary of State to place Kucinich's name on the primary ballot. The district court held a bench trial on January 11 and denied the request for a permanent injunction. Between January 15–18, 2008, the district court, this court, and the Supreme Court

denied Kucinich's emergency motion for injunction pending appeal. Kucinich's name was not placed on the ballot.

Now on appeal, Kucinich asks this court to reverse the district court and hold the oath unconstitutional.

## II. DISCUSSION

Although the appeal technically arises from the denial of injunctive relief, we need not consider the equitable criteria for awarding an injunction unless we first conclude that a constitutional violation has occurred. After a preliminary detour concerning the potential mootness of the case, we turn to the constitutional issues. Review of these purely legal issues is de novo.

### A.

Article III of the Constitution requires that "[t]he requisite personal interest that must exist at the commencement of the litigation [] must continue throughout its existence." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S. Ct. 1202, 1209 (1980). In general, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006). TDP contends that Kucinich's claim is moot because the 2008 primary election has occurred and "no order of the court can affect the rights of the parties with regard to the requested relief." Many claims that implicate election laws, however, fall within an exception to the mootness doctrine for "the class of controversies 'capable of repetition, yet evading review.'" First Nat'l Bank v. Bellotti, 435 U.S. 765, 774, 98 S. Ct. 1407, 1414 (1978) (quoting S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911)). There are two criteria for this exception: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same

action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct. 347, 349 (1975).

A reasonable argument can be made that Kucinich at least failed to satisfy the second prong, but we do not find this case moot given the current state of guidance from the Supreme Court. The first prong of the capable-of-repetition test can be said to have been satisfied by the short time frame between Kucinich's declaration of candidacy and the rejection of his place on the ballot.[1] As to the second prong, the Court noted in recent election cases that each particular plaintiff had specifically alleged a likelihood that he would again be adversely affected by the challenged law. See, e.g., Davis v. FEC, 128 S. Ct. 2759, 2770 (2008) (holding that the claim was not moot because the plaintiff expressed his intention to run for office in the next election); FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 127 S. Ct. 2652, 2663 (2007) (finding justiciability where "WRTL credibly claimed that it planned on running materially similar future targeted broadcast ads" that would be subject to the same statutory prohibition and where WRTL had sought an injunction that would permit such an ad during the next election cycle). The Court has not, however, dismissed an election case as moot where the plaintiff failed to allege that he would be governed by the same flawed law in the next election. See Anderson v. Celebrezze, 460 U.S. 780, 785 n.3, 103 S. Ct. 1564, 1567 n.3 (1983); Storer v. Brown, 415 U.S. 724, 737 n.8, 94 S. Ct. 1274, 1282 n.8 (1974); Rosario v. Rockefeller, 410 U.S. 752, 756 n.5, 93 S. Ct. 1245, 1249 n.5 (1973); Dunn v. Blumstein, 405 U.S. 330, 333 n.2, 92 S. Ct. 995, 998 n.2 (1972). This consistent line of rulings led Justice Scalia to observe that the Court's treatment of election

---

[1] Kucinich was well aware of the TDP oath because he signed it when he ran for President four years earlier, yet he did not challenge it then or at the ensuing TDP convention that re-adopted the oath. Nevertheless, each election cycle offers too little opportunity to litigate to conclusion a challenge to an election requirement like this one.

law cases differs from its traditional mootness jurisprudence by dispensing with the same-party requirement and "focusing instead upon the great likelihood that the issue will recur between the defendant and the other members of the public at large." Honig v. Doe, 484 U.S. 305, 335-36, 108 S. Ct. 592, 611 (1988) (Scalia, J., dissenting).

Thus, although Kucinich's counsel, when pressed at oral argument, could not state whether his client has an intention to run for President in the future and declined to express a belief that Kucinich will again be subject to the party's oath requirement, we are unwilling to dismiss the case as moot when "the issues properly presented, and their effects [], will persist as the [restrictions] are applied in future elections." Storer at 737 n.8; but cf. Smith v. Winter, 782 F.2d 508, 510 (5th Cir. 1986) (election law challenge held moot because elected officials prevailed in recall election at ballot box).

## B.

As a threshold matter, Appellants contend that the oath is unconstitutionally vague. If the oath passes this test, they next contend that denying ballot access to a candidate who refuses to sign TDP's oath is a "clear-cut violation" of Kucinich's rights of association, free speech, and equal protection.[2] Interrelated though these arguments may be, we take them in turn.

---

[2] Appellant Willie Nelson joined with Appellants as "a qualified elector of the State of Texas who intend[ed] to support Dennis J. Kucinich in the primary election." In order to establish standing, a plaintiff must meet an "irreducible constitutional minimum" of standing. Vermont Agency of Natural Res. v. United States, 529 U.S. 765, 771, 120 S. Ct. 1858, 1862 (2000) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)). In general, a voter's "supposed injury to their ability to influence the political process rests on gross speculation and is far too fanciful to merit treatment as an injury in fact." See Gottlieb v. FEC, 143 F.3d 618, 621 (D.C. Cir. 1998); but see N.Y. State Bd. of Elections v. Lopez Torres, 128 S. Ct. 791, 797 (2008) (voters' standing adjunct to that of candidates not discussed). Because Nelson's failure to establish standing would not dispose of the case, this court will assume the issue without deciding it. See Armstrong v. Turner Indus., 141 F.3d 554, 559 n.11 (5th Cir. 1998).

First, given its scope, purpose and effect, the oath is not unduly vague. To repeat, this oath required Kucinich to affirm that he would "fully support" the Democratic Party's presidential nominee, "whoever that shall be." Its purpose is to assure that intraparty candidate rivalries, once settled in the primary election and nominating conventions, will yield to the party's goal of electing its presidential candidate. The language is prospective and aspirational rather than an affirmation of fact, and as such, the adverb "fully" adds no objectively quantifiable elements to the "support" acknowledged in the oath. Texas law has rightly described a party loyalty oath as a moral obligation, which is distinct from an "executory legal" obligation because "the courts do not undertake to compel compliance." Westerman v. Mims, 227 S.W. 178, 180 (Tex. 1921); see also Love v. Wilcox, 28 S.W. 2d 515, 524 (Tex. 1930).[3] Kucinich was thus asked to undertake an unenforceable, moral obligation to comply in the future by supporting the outcome of the Democratic Party's presidential nominating contest. The extent of the commitment is uncertain, but it is not equivocal. Therefore, even assuming that this oath is susceptible to constitutional vagueness analysis, it is not vague.[4]

---

[3] But compare Backus v. Spears, 677 F.2d 397 (4th Cir. 1982), where a court upheld a city's refusal to allow a ballot spot as an independent to a candidate who had pledged, pursuant to South Carolina law, that if defeated in a primary, he would not run in the general election; the court held frivolous the candidate's challenge to the oath.

[4] The Fourteenth Amendment's guarantee of Due Process proscribes "laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'" Women's Med. Ctr. of Nw. Houston v. Bell, 248 F.3d 411, 421 (5th Cir. 2001) (quoting Smith v. Goguen, 415 U.S. 566, 572 n.8, 945 S. Ct. 1242 (1974)). A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement. See Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2299 (1972). Although support oaths can be read as requiring "nebulous, undefined responsibilities for action in some hypothetical situations," the Court has "rejected such rigidly literal notions." Cole v. Richardson, 405 U.S. 676, 683-84, 92 S. Ct. 1332, 1337 (1972) (upholding the constitutionality of a Massachusetts loyalty oath to "uphold and defend the Constitution" and "oppose the overthrow of the government . . . by force, violence or by any illegal or unconstitutional method").

Appellants' claimed denial of associational rights is controlled by Ray v. Blair, 343 U.S. 214, 72 S. Ct. 654 (1952). In Ray, the chairman of the Alabama Democratic Party Executive Committee refused to certify Blair as a candidate for presidential elector in the Democratic primary after Blair refused to sign an oath that he would "aid and support the nominees of the National Convention of the Democratic Party for President and Vice-President of the United States." Id. at 215. Although Ray ruled on a Twelfth Amendment claim concerning the selection of presidential electors, the Supreme Court directly addressed the comparative associational rights of political parties and candidates and concluded that "a political party's exclusion of candidates from a party primary because they will not pledge to support the party's nominees is a method of securing party candidates in the general election, pledged to the philosophy and leadership of that party." Id. at 227. Both the Supreme Court and lower courts have continued to rely on Ray notwithstanding significant developments in constitutional election law.[5] See Democratic Party of United States v. Wis., 450 U.S. 107, 122, 101 S. Ct. 1010, 1019 (1981); Ferency v. Austin, 666 F.2d 1023, 1027 (6th Cir. 1981); Curry v. Graddick, 802 F.2d 1302, 1318 (11th Cir. 1986); Duke v. Cleland, 954 F.2d 1526, 1532 (11th Cir. 1992).

Surprisingly, Kucinich cites New York State Bd. of Elections v. Lopez Torres, 128 S. Ct. 791 (2008), to distinguish Ray and support his associational

---

[5] To the extent that Kucinich relies on the line of cases in which the Supreme Court overturned oaths whose execution was required by state or federal governments as a condition of employment, his argument is misplaced. It is not the state of Texas but the Democratic party that requires an oath. Unlike government entities, political parties have constitutionally protected associational rights, which have been upheld by the Court except, for obvious reasons, in the case of white-only primaries. Compare, e.g., California Democratic Party v. Jones, 530 U.S. 567, 572 (2000) (holding that the state of California may not prevent political parties from limiting primary participation to voters registered with the party), with, e.g., Smith v. Allwright, 321 U.S. 649 (1944) (overturning Texas whites-only Democratic primary). Importantly for us, in Blair, the Court distinguished the white primary case, Allwright, because it found in the oath required of candidates that there were no "wrongs to rights secured by the Constitution." Blair, 343 U.S. at 227.

claim. In Lopez Torres, the Court upheld New York's statutory requirement that political parties select their nominees for the state supreme courts at a convention of delegates chosen by party members in a primary election. The candidate plaintiffs posed an argument, not unlike Kucinich's, that the selection process effectively froze out participants who were not in favor with party bosses. Lopez Torres, however, undermines Kucinich's claim because the Court expressly rejected the candidates' "claimed associational right not only to join, but to have a certain degree of influence in, the party." Id. at 798. Inasmuch as the Court would not force a change in the primary system to facilitate the plaintiffs' candidacies over those preferred by "party bosses," Lopez Torres offers little support for modifying a party-approved candidate loyalty oath to facilitate Kucinich's candidacy. Consequently, until the Supreme Court modifies Ray, we cannot hold that a prospective candidate has a right to compel a political party to place him on its ballot when he refuses to agree to support its candidates.

Kucinich next contends that the oath unconstitutionally compels his speech, "preventing" statements that may be perceived as non-supportive of the eventual nominee and "compelling" future speech in favor of the nominee. Such compulsion, he contends, deprives the state's Democratic primary of his contribution to the marketplace of ideas. This argument is difficult to disentangle from the associational claim, which challenges the oath as a compulsory expression by Kucinich. But even if it states a freestanding constitutional claim, we reject it. By its terms, the oath calls on a candidate presently to affirm only that he has the future intention to support the party's nominee. More to the point, how a candidate complies with the oath is up to him; the nature of his message is not compelled. He may reconcile his future speech with full support for the party's nominee although he criticizes some of the nominee's positions. Or, since the oath is legally unenforceable, he may repudiate it, at the risk of losing party members' support. Or, he may say

nothing. The oath, in short, neither abridges his speech, nor tells him what to say, nor impairs the flow of information to the public. Compare Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47, 63, 126 S. Ct. 1297, 1309 (2006) ("The compelled-speech violation in each of our prior cases [] resulted from the fact that the complaining speaker's own message was affected by the speech it was forced to accommodate.").

Appellants finally contend that the oath violates the Equal Protection Clause because "no similar oath is required for either TDP candidates for other offices other than President or Republican candidates for President in the Texas primary." The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985). In being subjected to the oath requirement, Kucinich is not being treated differently from other candidates for President in the Texas Democratic primary. Once again, Ray is instructive. In a footnote, the Supreme Court dismissed the suggestion that either the Equal Protection or Due Process Clause of the Fourteenth Amendment, "forbids a state to exclude candidates because they refuse to pledge their votes." 343 U.S. at 226 n.14. The Court found that an oath is reasonably related to a legitimate legislative objective of protecting a political party from "fraudulent invasion by candidates who will not support the party." Id. Given the broad latitude we accord to legislative classifications with a rational objective, there is no equal protection violation in applying the oath only to presidential candidates in the Democratic primary.[6]

---

[6] Kucinich argues, and the district court agreed, that his claims should be analyzed according to a balancing test articulated in Supreme Court cases concerning ballot access. See Anderson v. Celebreeze, 460 U.S. 780, 103 S. Ct. 1564 (1983); Burdick v. Takusih, 504 U.S. 428, 433, 112 S. Ct. 2059 (1992). These cases balance the individual's rights against state imposed requirements. Here, as in Lopez Torres, the plaintiffs challenge a political party rule, albeit one that governs ballot access; Lopez Torres rejected the plaintiffs' claims without balancing. We need not resolve the arguable methodological tension between these types of cases because

## III. CONCLUSION

This court need not judge the wisdom or utility of the TDP oath requirement. We do affirm, for the foregoing reasons, that it does not violate the Constitution. AFFIRMED.

---

of the inherent weakness of Kucinich's claimed invasion of his contitutional rights.