# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 12, 2012

No. 11-20035
Summary Calendar

Lyle W. Cayce
Clerk

DAVID BUREN WILSON,

                              Plaintiff-Appellant

v.

GERALD BIRNBERG, In His Capacity as Chairman of the Harris County
Democratic Party; BEVERLY KAUFMAN, Harris County Clerk; HOPE
ANDRADE, Secretary of State; GREG ABBOTT, Texas Attorney General;
EDWARD EMMETT, Harris County Judge,

                              Defendants-Appellees

---

Appeal from the United States District Court
for the Southern District of Texas

---

ON PETITION FOR REHEARING

---

Before DAVIS and SOUTHWICK, Circuit Judges.[*]

LESLIE H. SOUTHWICK, Circuit Judge:

---

[*] Judge Smith participated in the original decision of this case. Subsequent to the release of that opinion, a basis for recusal arose. Judge Smith has not participated in the rehearing, and this matter is being decided by a quorum. 28 U.S.C. § 46(d).

No. 11-20035

Appellant's Petition for Rehearing is GRANTED.  We withdraw the prior opinion, 660 F.3d 206, and substitute the following.

David Buren Wilson brought suit against various officials arising from his name not being placed on the 2010 primary election ballot in Houston, Texas. His complaint was dismissed for failure to state a claim.  We AFFIRM in part and REVERSE and REMAND in part.

On January 4, 2010, Wilson filed an application to run in the Democratic Party primary election for Harris County Commissioner.  The application was filed 15 minutes before the close of business on the last day applications were taken.  The application must list the candidate's residential address.  Tex. Elec. Code § 141.031(a)(4)(I).  Four days later, Harris County Democratic Party Chairman Gerald Birnberg denied the application and cited Wilson's failure to provide his residential address.  *See* Tex. Elec. Code § 141.032(e) (defective application is to be rejected).  Birnberg said the sole reason he withheld ballot certification was his conclusion that the address listed on the application was not for Wilson's residence as required by the statute.  Wilson's name was never placed on the primary ballot.  He failed to gain relief in various state courts.

In September 2010, Wilson sued Birnberg and other government officials in the United States District Court for the Southern District of Texas.  He claimed a denial of a right to ballot access and violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Wilson later added a claim that Section 141.032 of the Texas Election Code is unconstitutional on its face.  He sought injunctive relief and damages under 42 U.S.C. § 1983.  The district court dismissed the case for failure to state a claim.

## DISCUSSION

A motion to dismiss for failure to state a claim requires close examination of the operative complaint.  In this case, there were three complaints.  The

motion to dismiss was filed four days after the original complaint was filed, and one day after the first amended one was filed. The motion solely discussed the original complaint and was never revised to discuss either of the later ones. The second amended complaint was filed 18 days after the original one. The district court in ordering dismissal held that because all the complaints were "substantially similar," Birnberg's arguments were applicable to all. We find only one minor change in the first amended complaint, but the next one – the first shown to have been written by counsel – was substantially new.

A party has the right to amend a pleading one time if done within 21 days of its service. Fed. R. Civ. P. 15(a)(1)(A). Later amendments are permitted "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). We interpret the district court's consideration of the motion to dismiss as applicable to all three complaints to be an implicit granting of leave to file the second amended complaint. Had the district court held that the last complaint would not be considered, then the plaintiff could have sought leave to amend. We will not insist on the formalities now when the district court did not. The district court was dismissing the case, making Rule 15 less important. On remand, though, the district court should insist on a single operative complaint.

We review *de novo* a district court's dismissal for failure to state a claim. *True v. Robles,* 571 F.3d 412, 417 (5th Cir. 2009). A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A court's analysis generally should focus exclusively on what appears in the complaint and its proper attachments. *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006). We make all inferences in a manner favorable to the plaintiff, "but plaintiffs must allege facts that support

the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 152-53 (5th Cir. 2010).

There is facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

Dismissal is improper "if the allegations support relief on any possible theory." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). The question at the motion to dismiss stage is whether, "with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and  Procedure* § 1357, at 640 (3d ed. 2004). The inquiry focuses on the entirety of the complaint, regardless of how much of it is discussed in the motion to dismiss.

*I. Mootness*

We must first consider the jurisdictional issue of mootness. A suit may become moot only as to a particular form of relief. Therefore, we separately analyze mootness as to the claims supporting money damages and for equitable relief. *Henschen v. City of Houston*, 959 F.2d 584, 587 (5th Cir. 1992).

Generally, a request for an injunction is moot "upon the happening of the event sought to be enjoined." *Harris v. City of Houston.*, 151 F.3d 186, 189 (5th Cir. 1998). The requested injunctive relief included judicial orders that would have affected the November 2010 election, such as placing Wilson's name on the ballot. That is now impossible. Claims solely supporting that remedy are moot. *Willy v. Admin. Review Bd.*, 423 F.3d 483, 494 n.50 (5th Cir. 2005).

Wilson also seeks a declaration that the statute requiring the rejection of a non-compliant application is unconstitutional. *See* Tex. Elec. Code §

141.032(e).  The applicant is to be given notice of the reasons for the rejection, which would then allow correction if that is possible.  *Id.*  Wilson claimed this statute fails to provide for a hearing, denying Wilson meaningful access to the courts.  Should the statute be declared unconstitutional, Wilson also seeks to have the Texas Secretary of State ordered "to issue a directive to all election officials to enjoin enforcement of Texas Election Code § 141.032."

We do not determine whether the claim for equitable relief regarding Section 141.032 is now moot.  That is because we later have to address on the merits the supposed constitutional violation on which the equitable relief would be based.  If Wilson's constitutional rights were violated, and if that violation "caused actual damage," then he has "stated a live claim under § 1983." *Henschen*, 959 F.2d at 588.  Therefore, Wilson's claims will need to be analyzed for purposes of determining whether damages are available.  In that analysis, we determine the only viable constitutional claim arises from the guarantee of equal protection under the Fourteenth Amendment.  Because the other claims fail on the merits, there can be no damages.  We need not determine whether those non-existent constitutional violations that will not support a damage award might also be moot for purposes of other relief.  The review that follows of the potential mootness of the request for injunctive relief is therefore solely in the context of equal protection.

The State argues that all relevant issues for declaratory or injunctive relief are moot now that the election has passed.  Wilson invokes the capable-of-repetition, yet evading-review exception to mootness.  Generally that exception has two requirements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to

the same action again." *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

We concluded in *Kucinich* that in election-law cases, the Supreme Court has not always required that there be a likelihood that the same complaining party will be subject to the challenged action later. *Id.* at 164-65 (collecting cases). On some occasions, the Court has dispensed with the same-party requirement and focused "instead upon the great likelihood that the issue will recur between the defendant and other members of the public at large." *Id.* at 165 (quoting *Honig v. Doe*, 484 U.S. 305, 335-36 (1988) (Scalia, J., dissenting)). We agree with a Sixth Circuit judge that "the Supreme Court, this Court, and several of this Court's sister circuits have relaxed the same party requirement in the election law context." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 600 (6th Cir. 2006) (Clay, J., concurring and dissenting).

It is certainly true, as we noted in *Kucinich*, that the Supreme Court mentioned in two recent election-law cases that the "plaintiff had specifically alleged a likelihood that he would again be adversely affected." *Kucinich*, 563 F.3d at 164 (citing *Davis v. FEC*, 554 U.S. 724, 736 (2008) (candidate stated intent to run again); and *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462-63 (2007) (similar)); *accord Moore v. Hosemann*, 591 F.3d 741, 744-45 (5th Cir. 2009). The First Circuit concluded from those recent opinions that mootness can be avoided only if the same complaining party will be affected in the future. *Barr v. Galvin*, 626 F.3d 99, 105-06 (1st Cir. 2010). Though we disagree the Supreme Court created such a rule, we do agree that "not every election case fits within [the] four corners" of the capable-of-repetition but evading-review exception. *Id.* at 105. We were unwilling to dismiss Kucinich's case as moot because the same controversy was likely to recur. *Kucinich*, 563 F.3d at 165

No. 11-20035

(citing *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974)).  Earlier, we held that an election case is not moot when "other individuals certainly will be affected" by the complained-of injury.  *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006).

Applying these principles, we discern only one theory that could be pursued as a denial of equal protection.  It is that Birnberg had an animus towards Wilson, causing Birnberg to treat Wilson's application differently than those of other potential candidates.  This is a claim of a highly individualized equal protection violation.  To be capable of repetition, the election official processing his paperwork would again need to be Birnberg and he would need again to manifest allegedly discriminatory animus in excluding Wilson from the ballot.  Regardless of our *Kucinich* analysis that the same party might not need to show he would later be subject to the same improper action, here the nature of the claim is strictly personal to Wilson.  In the absence of an assertion by Wilson that he plans to run again, there is no "'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur."  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).  There is no basis on which to find that other members of the public will experience it.

Wilson also demanded a new general election.  A court will only invalidate an election "in exceptional circumstances, usually when there has been egregious defiance of the Voting Rights Act."  *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010).  Wilson's claims do not warrant that extraordinary remedy.

In summary, no equitable relief is appropriate either because the relief is moot or because we determine when examining the claims for damages that no constitutional violation occurred that would support such relief.

7

No. 11-20035

## II. Constitutional Claims

Birnberg's actions caused Wilson not to be listed on the ballot, a result which Wilson claims violated several constitutional rights. We will discuss procedural due process, the political rights protected by *Anderson v. Celebrezze*, 460 U.S. 780 (1983), substantive due process, and the Equal Protection Clause. We also will assess Wilson's challenge to the constitutionality of the election statute in question.

### A. Claims Arising from Birnberg's Conduct

#### 1. Procedural Due Process

In order for a person to have a procedural due process claim that damages or other relief can remedy, he must have been denied life, liberty, or property protected by the Fourteenth Amendment. *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). The district court held that Wilson had no property right to be a candidate, citing *Velez v. Levy*, 401 F.3d 75, 86-87 (2d Cir. 2005). That court relied on a Supreme Court opinion that explained, the "unlawful denial by state action of a right to state political office is not a denial of a right of property or liberty secured by the due process clause." *Snowden v. Hughes*, 321 U.S. 1, 7 (1944). Earlier the Court had held that "public offices are mere agencies or trusts, and not property as such" and that "the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." *Taylor and Marshall v. Beckham*, 178 U.S. 548, 577 (1900); *see also Snowden*, 321 U.S. at 7 (re-affirming *Taylor*).

Wilson correctly notes that since *Taylor* and *Snowden* were decided, the Supreme Court has charted a somewhat new course in defining property under the Fourteenth Amendment. For example, the Court has explained that a property interest can be created and "defined by existing rules or

8

understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Matthews v. Eldridge*, 424 U.S. 319 (1976) (social security entitlement); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (public welfare benefits). Though these "intervening cases may cast a shadow over *Taylor* and *Snowden,* 'it is the Supreme Court's prerogative alone to overrule one of its precedents.'" *Velez*, 401 F.3d at 87 (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)).

Thus, we continue to hold that public office does not constitute property within the meaning of the Due Process Clause. In a case post-dating the modern due process caselaw, this circuit explained that a candidate who claimed his opponent was improperly declared the winner of an election had not been denied a property right. *Gamza v. Aguirre*, 619 F.2d 449, 452 n.3 (5th Cir. 1980). That same year, we recognized "there is no constitutional right to run for state office protected by the Fourteenth Amendment." *Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 629 F.2d 993, 998 n.9 (5th Cir. 1980) (citing *Snowden*, 321 U.S. at 6-7). Our sister circuits also recognize these precedents as still vital. *See, e.g.*, *Abeyta v. Town of Taos*, 499 F.2d 323, 327 (10th Cir. 1974); *Burk v. Peck*, 470 F.2d 163, 165 (6th Cir. 1972) (citing *Taylor*, 178 U.S. 548); *Velez,* 401 F.3d at 87. Accordingly, because Wilson lacks an interest protected by procedural due process, we affirm the district court's dismissal of that cause.

### 2. Burden on Ballot Access

Wilson next argues that the Constitution protects his interest in obtaining a place on the ballot based on his interpretation of *Anderson v. Celebrezze*, 460 U.S. 780 (1983). We recently described *Anderson* and a later Supreme Court decision as requiring courts to "balance the individual's rights [to ballot access]

against state imposed requirements." *Kucinich*, 563 F.3d at 168 n.6 (citing *Anderson* and also *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)).

We start by identifying the nature of the right recognized in *Anderson* and *Burdick*. The Supreme Court explained that laws pertaining to ballot access burden "two different, although overlapping kinds of rights – the right of individuals to associate for the advancement of political beliefs" rooted in the First Amendment, and "the right of qualified voters . . . to cast their votes effectively." *Anderson*, 460 U.S. at 787.[1]

The question in *Anderson* was whether the state of Ohio had "placed an unconstitutional burden on the voting and associational rights" of the supporters of independent Presidential candidate John Anderson. *Anderson*, 460 U.S. at 782. The Court agreed that the state's scheduling of the candidate-filing deadline early in the year created an improper burden, inasmuch as there were not significant state interests in the early date and there were substantial voter interests in having a wide choice of candidates for President. *Id.* at 806.

By contrast, Wilson does not seek to use this doctrine to challenge the constitutionality of a statute or election rule. *Compare Kucinich*, 563 F.3d at 163 (challenge to party loyalty oath); *Burdick,* 504 U.S. at 430 (objection to prohibition on write-in candidates); *Hatten v. Rains*, 854 F.2d 687, 688 (5th Cir. 1988) (attack on mandatory retirement age for judicial candidates); *Zielasko v. Ohio*, 873 F.2d 957, 958 (6th Cir. 1989) (similar). He does not argue that

---

[1] The aspects of the right to vote identified in *Anderson* find shelter in the Fourteenth Amendment, and stem from the "'fundamental rights' strand of equal protection analysis." *Anderson*, 460 U.S. at 787 n.7; *see also Gamza*, 619 F.2d at 453 (the equal protection clause grants voters a "narrow substantive right" to equality with other voters). Conversely, substantive due process rights originate in the concept of "liberty" in the Due Process Clause. *See Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997).

compelling a candidate to list his residential address on his application is an improper burden. Tex. Elec. Code § 141.031(a)(4)(I). We already rejected his argument that the process provided under the statute is unconstitutionally slim. Had Wilson argued that there was some interest of his that outweighed the state's interest in having candidates declare where they live, then *Anderson* and similar cases might be applicable. They are not applicable here.

### 3. Substantive Due Process

To the extent that Wilson seeks to assert a distinct cause of action under substantive due process, that claim must fail. "[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quotation marks and citation omitted). Here, Wilson's claims are rooted in procedural due process, the Equal Protection Clause, and the First Amendment. Those provisions are our exclusive guideposts. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010); *see also Velez*, 401 F.3d at 94 ("[P]laintiffs seeking redress for [specifically] prohibited conduct in a § 1983 suit cannot make reference to broad notion of substantive due process.").

### 4. Equal Protection Violation

The usual equal protection challenge is "that a statute discriminates on its face . . . against certain [protected] groups or trenches upon certain fundamental interests." *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987). Equal protection also protects against the "unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike." *Id.* at 1112-13 (quoting *Snowden*, 321 U.S. at 8). To be a "class of one," the plaintiff must establish (1) he was

"intentionally treated differently from others similarly situated" and (2) there was no rational basis for any such difference. *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). These "isolated events that adversely affect individuals" presumptively do not violate equal protection. *Gamza*, 619 F.2d at 453.

Wilson alleged that Birnberg intentionally deprived him of ballot access by, as the complaint states, "rejecting Wilson's application out of retaliation for Wilson's exercise of free speech." Specifically, Wilson claimed that during a prior election he had distributed flyers critical of the successful Democratic mayoral candidate, Annise Parker. This is "factual content" supporting Birnberg's liability "for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949.

The election for which Wilson was denied a place on the ballot was a primary to select the Democratic Party's nominee for Harris County Commissioner's Court, Precinct No. 4. Birnberg chairs the Harris County Democratic Party and the county seat is Houston. There were no other Democratic candidates. Wilson filed his application for candidacy in the last hour of the last possible day, which meant that had his filing been accepted, he would have become the Democratic Party nominee by default.

The facts pled are that a political-party chairman denied an application on an improper basis in order to prevent a critic of the mayor from receiving her party's nomination. "The plausibility standard [for a complaint] is not akin to a 'probability requirement' . . . ." *Id.* Rule 12(b)(6) does not permit us to affirm the district court's dismissal of this claim unless we determine "it is beyond doubt" that Wilson "cannot prove a plausible set of facts" to support his allegations. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

No. 11-20035

Pursuant to the election code, a ballot application must include "the candidate's residence address," unless the residence lacks an address in which case a personal mailing address "and a concise description of the location of the candidate's residence" will suffice. Tex Elec. Code § 141.031(a)(4)(I). Wilson's complaint states he "was an eligible candidate" and that his "voter history, and Texas driver['s] license and other documents show that Plaintiff's residence is correctly stated in his application." It asserts that by virtue of that fact, Birnberg's "ministerial duty mandated that [he] certify and place Plaintiff's name on the primary election ballot."

In an affidavit affixed to his motion to dismiss, Birnberg claimed he reviewed marriage and other records to determine that the address Wilson supplied on his application was not actually for his residence. Consequently, Wilson's application failed to comply with the election law. We are at the motion to dismiss stage, however, and "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). At this stage, Birnberg's rebuttals must be ignored and Wilson's assertions taken as true. *See Lane*, 529 F.3d at 557.

When dismissing the equal protection claim, the district court cited *Gold v. Feinberg*, 101 F.3d 796, 802 (2d Cir. 1996). That opinion held that where there "exists a state law remedy to the election irregularities that is fair and adequate, human error in the conduct of elections does not rise to the level of a Fourteenth Amendment constitutional violation actionable under § 1983 in the absence of willful action by state officials intended to deprive individuals of their constitutional right to vote." *Gold*, 101 F.3d at 802; *see also id.* at 800 (explaining that plaintiff's action arose under equal protection).

13

Reliance on this principle is premature. Wilson alleged intentional discrimination, not unintended irregularities. Had Wilson not alleged that his application was compliant, Birnberg's motivations might have been irrelevant inasmuch as the statute mandates that a non-compliant application be rejected. *See* Tex. Elec. Code § 141.032(e); *id.* § 141.031. The complaint claimed enough. Further proceedings are needed to determine whether Wilson in fact submitted a proper application and, if he did, whether Birnberg purposefully discriminated or simply made an "error or mistake in judgment." *E&T Realty*, 830 F.2d at 1114; *cf. Gamza*, 619 F.2d at 453-54.

The dismissal of the equal protection claim is reversed and remanded.

Birnberg has moved to have the newly chosen chair of the Harris County Democratic Party replace him as a defendant. We deny the motion without prejudice to the right to renew it in the district court. This suit had not progressed beyond a motion to dismiss for failure to state a claim, leaving factual questions unaddressed that may be relevant to the motion. There is no question that a political party in its conducting of state-authorized primary elections is performing a function "under color of any statute," and Section 1983 is potentially applicable to the conduct. *See* 1A Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses § 5.18, at 5-180 (4th ed. 2011). Less clear is the answer to whether the new party leader is the proper defendant. Unless substitution is unopposed, briefing and argument would be beneficial.

B. Challenge to the Election Statute

Wilson argues that the relevant statute did not provide the constitutional minimum process he was due. The entire section reads, "If an application does not comply with the applicable requirements, the authority shall reject the

application and immediately deliver to the candidate written notice of the reason for the rejection." Tex. Elec. Code § 141.032(e).

Procedural due process challenges must demonstrate that the "state has deprived a person of a liberty or property interest"; if it has, "we must determine whether the procedures relative to that deprivation were constitutionally sufficient." *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994). As explained already, Wilson has no property interest in being a candidate for public office. Thus, his challenge fails on that basis alone.

Because the older caselaw dealing with the absence of a property interest in public office might be considered suspect, we also analyze whether the Texas statute provides too little process. Three factors are considered in identifying the process that is due: (1) the private interest affected, (2) the risk of an erroneous deprivation with the process supplied, and (3) the government's interests. *See Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 397-98 (5th Cir. 2011) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).

The first factor, which focuses us on the private interests of potential candidates, is significant in view of the rights the Supreme Court has held to be implicated. *See Anderson*, 460 U.S. at 786-87.

The other two factors weigh against Wilson's claim. There is no appreciable risk of deprivation under Texas Election Code Section 141.032(e). The provision requires immediate, written notice that contains the "reason for the rejection." This gives applicants an opportunity to have a defect promptly addressed or to seek relief in court. *See also* Tex. Elec. Code § 273.081 (person harmed under Texas Election Code may seek injunctive relief). Section 141.032 "serves as a safety net for candidates who file their applications early in the filing period, assuring that individuals willing to commit to public service will

receive the assistance of party officials in complying with the myriad and technical requirements for becoming a party candidate." *In re Gamble*, 71 S.W.3d 313, 318 (Tex. 2002).

In weighing the governmental interest, we consider the specific "function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail." *Swindle*, 655 F.3d at 397-98 (quoting *Matthews*, 424 U.S. at 334-35). Particularly salient is "the ability of States to operate elections fairly and efficiently." *Burdick*, 504 U.S. at 438. Texas has an important interest in evaluating the eligibility of office seekers. State regulation of elections is necessary "if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* at 433 (quotation marks and citation omitted). If the state election requirement is non-discriminatory and reasonable, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Id.* at 434 (quoting *Anderson*, 460 U.S. at 788). The challenged statute is constitutional.

We AFFIRM in all respects except for Wilson's equal protection claim as to Birnberg as party chairman. The dismissal of that claim is REVERSED and the claim is REMANDED. The motion for substitution of a party defendant is DENIED without prejudice.