# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2010

No. 09-50953

Lyle W. Cayce
Clerk

ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS INC,

Plaintiff – Appellant

v.

TEXAS MEDICAL BOARD, (TMB); ROBERTA M. KALAFUT, Individually and in her Official Capacity; LAWRENCE L. ANDERSON, Individually and in his Official Capacity; MICHAEL ARAMBULA, Individually and in his Official Capacity; JULIE K. ATTEBURY, Individually and in her Official Capacity; JOSE BENAVIDES, Individually and in his Official Capacity; PATRICIA S. BLACKWELL, Individually and in her Official Capacity; MELINDA S. FREDRICKS, Individually and in her Official Capacity; MANUAL G. GUARJARDO, Individually and in his Official Capacity; AMANULLAH KAHN, Individually and in his Official Capacity; MELINDA MCMICHAEL, Individually and in her Official Capacity; MARGARET MCNEESE, Individually and in her Official Capacity; CHARLES E. OSWALT, Individually and in his Official Capacity; LARRY PRICE, Individually and in his Official Capacity; ANNETTE P. RAGGETT, Individually and in her Official Capacity; PAULETTE BARKER SOUTHARD, Individually and in her Official Capacity; TIMOTHY J. TURNER, Individually and in his Official Capacity; TIMOTHY WEBB, Individually and in his Official Capacity; IRVIN E. ZEITLER, Individually and in his Official Capacity; DONALD PATRICK, Individually and in his Official Capacity; JOHN DOES 1-10, Who are working for the TMB, Individually and in their Official Capacities,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas

No. 09-50953

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.

EDITH H. JONES, Chief Judge:

The Association of American Physician and Surgeons ("AAPS") sued the Texas State Board of Medical Examiners ("the Board") under 42 U.S.C. § 1983 for declaratory and injunctive relief against alleged constitutional violations including the Board's use of anonymous complaints and retaliatory actions against physicians. The district court dismissed the case based on AAPS's lack of standing, noting an absence of "Fifth Circuit authority directly on point for the types of claims raised in this cause."

Weighing in on this issue, we conclude that AAPS has standing to bring this suit on behalf of its members. The judgment is therefore vacated and the case remanded for further proceedings.

## I. BACKGROUND

AAPS is a not-for-profit membership organization incorporated under the laws of Indiana and headquartered in Tucson, Arizona. Its membership includes thousands of physicians in nearly every state, including Texas. AAPS asserts that part of its mission is to protect its members from arbitrary and unlawful governmental action.

The Board "is an agency of the executive branch of state government with the power to regulate the practice of medicine." TEX. OCC. CODE § 152.001. The Board consists of nineteen members appointed by the governor – twelve physicians and seven members of the public. *Id.* § 152.002. At the time this case was filed, Dr. Roberta Kalafut was the Board's president, and Lawrence Anderson was chair of the Disciplinary Process Review Committee. The other named and unnamed defendants were Board members and employees. The Board has statutory authority to discipline physicians for misconduct. *See, e.g.*, *id.* § 164.001.

2

No. 09-50953

AAPS sued the Board on behalf of its members for what it describes as pervasive and continuing violations of members' constitutional rights. AAPS alleged first that the Board manipulated anonymous complaints. Illustratively, Kalafut targeted physicians using anonymous complaints filed by her husband, and anonymous complaints allegedly were filed by a New York insurance company seeking to avoid paying a physician for claims. Second, AAPS alleged that the Board knew that the former chairman of its Disciplinary Process Review Committee, Keith Miller, was operating with a significant conflict of interest, but it took no corrective action and failed to disclose the conflict to the public or the physicians subject to discipline. Dr. Miller was allegedly an expert witness for plaintiffs in up to fifty malpractice cases during his tenure as chair of the committee and generated business for himself as an expert by improperly disciplining physicians.

Third, AAPS alleged that the Board arbitrarily rejected a decision in favor of a doctor by an administrative law judge from the State Office of Administrative Hearings, and then issued a sanction that damaged the physician's reputation. Fourth, AAPS asserted that the Board violated AAPS members' privacy by releasing unproven facts and records concerning disciplinary cases. Finally, AAPS alleged that the Board has retaliated against physicians who have complained about the Board by subjecting them to disciplinary proceedings and derogatory public comments. AAPS alleged violations of the confrontation clause and the due process, equal protection, and free speech provisions of the Constitution, and violation of federal statutory privacy requirements.[1]

The Board's answer included a number of affirmative defenses and sought dismissal under Fed. Rule Civ. Pro. 12(b)(1), arguing that AAPS lacked standing

---

[1] AAPS's complaint cites the Health Insurance Portability and Accountability Act (HIPPA), codified at 29 U.S.C. § 1181 *et seq.*

3

No. 09-50953

to sue on behalf of its members.  In the midst of ongoing discovery disputes, the district court granted the motion to dismiss.  AAPS appeals under 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

"We review *de novo* motions to dismiss and motions for judgment on the pleadings." *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (citations omitted).  "[W]hen standing is challenged on the basis of the pleadings," we must "accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S. Ct. 849, 855 (1988) (citations and internal quotation omitted).

## III.  DISCUSSION

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy", but "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S. Ct. 2197, 2211 (1975).  AAPS's standing here depends on its ability to sue for redress of its members' grievances.  Thus,

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*See Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977).  The first two components of *Hunt* address constitutional requirements, while the third prong is solely prudential.  *See United Food &*

4

No. 09-50953

*Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555, 116 S. Ct. 1529, 1535 (1996).

Beyond question, AAPS satisfies the first and second *Hunt* prongs.[2] As to the third prong, the Board argued that because AAPS's claims require the participation of individual members, it cannot meet that test. The district court agreed that AAPS's allegations about anonymous complaints, conflicts of interest, arbitrary administrative rulings, breaches of privacy, and retaliation cannot be sustained without the extensive participation of individual members and therefore render associational standing improper. We hold otherwise.

Because *Hunt*'s third prong is prudential, "the general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limi[t] on the exercise of federal jurisdiction, not a constitutional mandate." *Brown Grp.*, 517 U.S. at 557, 116 S. Ct. at 1536 (citations and quotations omitted). The third prong focuses importantly on "matters of administrative convenience and efficiency." *Id.* Courts assess this prong by examining both the relief requested and the claims asserted. *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 n.5 (5th Cir. 2009). In general, "an association's action for damages running solely to its members would be barred for want of the association's standing to sue." *Brown Grp.*, 517 U.S. at 546, 116 S. Ct. at 1531. But in this case, AAPS seeks declaratory and injunctive relief.

---

[2] The first prong never has been in question, but the second prong was disputed at the dismissal stage, when the Board argued that the individual interests at issue are not germane to AAPS's purpose. The district court did not address that argument because it found the third *Hunt* prong dispositive. The Board, however, neither briefed nor argued the germaneness requirement before this court and therefore abandoned it. Regardless, the germaneness requirement is "undemanding" and requires "mere pertinence" between the litigation at issue and the organization's purpose. *See Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2nd Cir. 2006). Through its affidavits and acts, AAPS has demonstrated its obvious interest in representing its members against alleged governmental abuse. AAPS easily surpasses the low threshold of *Hunt*'s germaneness prong.

No. 09-50953

As the district court noted, this court has not had occasion to consider *Hunt*'s third prong with respect to claims similar to those AAPS alleges.[3] Other circuits have diverged in analogous cases. AAPS relies on precedents from the Third and Seventh Circuits, which allow standing if an association plaintiff can prove its case with a sampling of evidence from its members. *See Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278 (3d Cir. 2002)*; Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83 (3d Cir. 1991); *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 601–02, 608 (7th Cir. 1993). The Board, in contrast, emphasizes the Tenth Circuit's rejection of an association's standing in *Kansas Health Care Association, Inc. v. Kansas Department of Social & Rehabilitation Services*, 958 F.2d 1018 (10th Cir. 1992).

The Third Circuit's approach is instructive. In *Hospital Council*, a constitutional challenge was filed against certain cities' alleged practice of coercing tax-exempt hospitals into making payments in order to obtain zoning approval, protect their tax-exempt status, and secure other governmental benefits. *Id.* at 85. Then-Judge Alito explained that although evidence would be needed from certain individual hospitals and their employees in order to prove whether the challenged policy had been enforced, the participation of all of the individual members was unnecessary and thus associational standing was appropriate. *Id.* at 89–90; *see also Pa. Psychiatric Soc'y*, 280 F.3d at 287 (holding that plaintiff could attempt to establish associational standing with limited individual member participation).

---

[3] We rejected associational standing in *Friends for American Free Enterprise Association v. Wal-Mart Stores, Inc.*, because the plaintiff's common law tortious interference claims at issue were wholly fact-specific as to the individual members. 284 F.3d 575 (5th Cir. 2002). Likewise, in *Cornerstone Christian Schools v. University Scholastic League*, associational standing was rejected for plaintiffs asserting a free exercise claim. 563 F.3d 127 (2009) (citing *Harris v. McRae*, 448 U.S. 297, 100 S. Ct. 2671 (1980)). Neither case is particularly instructive here.

6

No. 09-50953

The Seventh Circuit expressly adopted the Third Circuit's reasoning in *Retired Chicago Police Association,* a suit seeking to prohibit the city from changing the terms of annuitant health care costs under the city's pension plan. 7 F.3d at 590. To prove the case for a contract breach, some retirees would need to submit evidence, but the active participation of each annuitant would not be required. *Id.* at 601–03. The court noted:

> We can discern no indication in *Warth*, *Hunt*, or *Brock* that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association. Such a stringent limitation on representational standing cannot be squared with the Court's assessment in *Brock* of the efficiencies for both the litigant and the judicial system from the use of representational standing.

*Id*. at 601-02.

Both of these circuits interpret *Hunt* to mean, in light of the Court's previous decision in *Warth*, that as long as resolution of the claims benefits the association's members and the claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry, the participation of those individual members will not thwart associational standing. *See also Pa. Psychiatric Soc'y*, 280 F.3d at 286.

The Tenth Circuit, however, refused to grant associational standing to a medical services provider association that sought a preliminary injunction against Kansas's planned Medicaid reimbursement rate freeze. *See Kansas Health Care Ass'n*, 958 F.2d at 1018. Among other things, the association argued that the state's findings as to reimbursement rates did not comply with federal law. *Id*. at 1020. The Tenth Circuit held that determining the adequacy of the rates would "necessarily require individual participation of the associations' members." *Id*. at 1023. Further, to assess the state's compliance with federally prescribed procedures in arriving at its reimbursement rate, the

7

No. 09-50953

district court would be required to make a detailed economic examination of individual providers. The court acknowledged that "minimal participation" from individual members might not defeat associational standing, *Id.* at 1022 (citing *AMISUB (PSL), Inc. v. Colo. Dep't of Soc. Servs.*, 879 F.2d 789 (10th Cir.1989)), but it held that the amount of individual participation necessary to prove the association's specific claims foreclosed associational standing.

The differences between these decisions' approach to associational standing are more of degree than kind. *Hunt*'s prudential inquiry concerns both claims alleged and the relief sought because only a case-specific analysis will reveal whether an association or its individual members are better positioned to present a case. *See Int'l Union, UAW v. Brock*, 477 U.S. 274, 289-90, 106 S. Ct. 2523, 2532-33 (1986) (comparing associational standing with class action criteria). In *Hospital Council* and *Retired Chicago Police Association*, a discrete pattern of conduct or contract breach was alleged to have applied equally against a large number of association members. Proving the illegality of the pattern or breach of contract required some evidence from members, but once proved as to some, the violations would be proved as to all.

In *Kansas Health Care Association*, however, the court carefully distinguished between claims of administrative illegality that would be apparent with minimal factual development and those that could only be proven by intensive analysis of individual hospitals. Because of their fact-sensitivity, the ratemaking inquiries before the court did not lend themselves to proof that would readily apply to all of the members.

The present case, on balance, more closely resembles *Hospital Council* than *Kansas Health Care Association.* AAPS's complaint alleged, among other things, abuses perpetrated on physicians by means of anonymous complaints, harassment of doctors who complained about the Board, and conflicts of interest by decision-makers. If practiced systemically, such abuses may have violated or

8

No. 09-50953

chilled AAPS members' constitutional rights.   Proof of these misdeeds could establish a pattern with evidence from the Board's witnesses and files and from a small but significant sample of physicians.   Because AAPS also seeks only equitable relief from these alleged violations, both the claims and relief appear to support judicially efficient management if associational standing is granted.

In so holding, we "accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party," *Pennell, supra*, but we express no opinion on whether AAPS will ultimately be able to prove its rather dramatic claims.   Under these circumstances, dismissal under Rule 12(b)(1) was improper.

### III.  CONCLUSION

Because AAPS was entitled to claim associational standing on behalf of its members, we vacate and remand for further proceedings not inconsistent with this opinion.

**VACATED AND REMANDED.**

9