# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 31, 2012

No. 11-60446

Lyle W. Cayce
Clerk

HANCOCK COUNTY BOARD OF SUPERVISORS,

Plaintiff

v.

KAREN LADNER RUHR, in her official capacity as Hancock County Circuit
Clerk and Hancock County Registrar; ET AL,

Defendants

JIM HOOD, Attorney General for the State of Mississippi, ex rel. the State of
Mississippi

Intervenor Defendant

--------------------------------------------------------------------------------

HAZLEHURST, MISSISSIPPI BRANCH OF THE NATIONAL
ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on
behalf of themselves and all others similarly situated; NANETTE
THURMOND-SMITH,

Plaintiffs - Appellants

v.

COPIAH COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; COPIAH
COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE
COMMITTEE; COPIAH COUNTY, MISSISSIPPI REPUBLICAN PARTY
EXECUTIVE COMMITTEE; COPIAH COUNTY, MISSISSIPPI BOARD OF
ELECTION COMMISSIONERS; EDNA STEVENS, in her official capacity as
Circuit Clerk,

Nos. 11-60446, 11-60676

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee

------------------------------------------------------------------------------------

REVEREND FRANK LEE, on behalf of him self and all others similarly situated; PIKE COUNTY, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants

v.

PIKE COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; PIKE COUNTY, MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE; PIKE COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; ROGER GRAVES, in his official capacity as Circuit Clerk; PIKE COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE,

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee

------------------------------------------------------------------------------------

SIMPSON COUNTY, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on behalf of themselves and all others similarly situated; L. J. CAMPER, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants

v.

SIMPSON COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; SIMPSON COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE; SIMPSON COUNTY, MISSISSIPPI

2

Nos. 11-60446, 11-60676

REPUBLICAN PARTY EXECUTIVE COMMITTEE; SIMPSON COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; CINDY JENSEN, in her official capacity as Circuit Clerk,

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee
--------------------------------------------------------------------------
AMITE COUNTY, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on Behalf of Themselves and all others Similarly Situated; GLENN WILSON, on Behalf of Themselves and all others Similarly Situated,

Plaintiffs - Appellants

v.

AMITE COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; AMITE COUNTY, MISSISSIPPI DEMOCRATIC EXECUTIVE COMMITTEE; AMITE COUNTY, MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE; AMITE COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; SHARON WALSH, in Her Official Capacity as Circuit Clerk,

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee
--------------------------------------------------------------------------
WAYNE COUNTY, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on behalf of themselves and all others similarly situated; LEAH PARSON, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants

v.

WAYNE COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; WAYNE COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE

3

Nos. 11-60446, 11-60676

COMMITTEE; WAYNE COUNTY, MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE; WAYNE COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; ROSE BINGHAM, in her official capacity as Circuit Clerk,

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee

--------------------------------------------------------------------------------

VICKSBURG, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on behalf of itself and all others similarly situated,

Plaintiffs - Appellants

v.

WARREN COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; WARREN COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE; WARREN COUNTY, MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE; WARREN COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; SHELLY ASHLEY-PALMERTREE, in his official capacity as Circuit Clerk,

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee

--------------------------------------------------------------------------------

CLAIBORNE COUNTY, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on behalf of itself and all others similarly situtated,

Plaintiff - Appellant

v.

4

Nos. 11-60446, 11-60676

CLAIBORNE COUNTY, MISSISSIPPI BORD OF SUPERVISORS; CLAIBORNE COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE; CLAIBORNE COUNTY, MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE; CLAIBORNE COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; SAMMIE GOOD, in her official capacity as Circuit Clerk,

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee

--------------------------------------------------------------------------------

ADAMS COUNTY, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, on behalf of themselves and all others similarly situated; JACQUELINE MARSAW, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants

v.

ADAMS COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; ADAMS COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE; ADAMS COUNTY, MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE; ADAMS COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; EDWARD WALKER, in his official capacity as Circuit Clerk,

Defendants - Appellees

JIM HOOD,

Intervenor Defendant - Appellee

————

Consolidated with Case No. 11-60676

————

TALLAHATCHIE COUNTY, MISSISSIPPI BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE;

Nos. 11-60446, 11-60676

JOHNNY THOMAS, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants

DOROTHY CHESTNUT,

Appellant

v.

TALLAHATCHIE COUNTY, MISSISSIPPI BOARD OF SUPERVISORS; TALLAHATCHIE COUNTY, MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE; TALLAHATCHIE COUNTY, MISSISSIPPI REPUBLICAN PARTY EXECUTIVE COMMITTEE; TALLAHATCHIE COUNTY, MISSISSIPPI BOARD OF ELECTION COMMISSIONERS; STEPHANIE SIMS, in her official capacity as Circuit Clerk,

Defendants - Appellees

JIM HOOD, Attorney General for the State of Mississippi, ex Rel. The State of Mississippi,

Intervenor Defendant - Appellee

_____

Appeals from the United States District Court
for the Southern District of Mississippi
USD No. 1:10-CV-564

Appeal from the United States District Court
for the Northern District of Mississippi
USD No. 2:11-CV-42

_____

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

6

Nos. 11-60446, 11-60676

This appeal challenges the dismissal of nine complaints asserting Fourteenth Amendment "one person, one vote" claims against Mississippi officials. Each Mississippi county has a Board of Supervisors and maintains five supervisor districts. Primary elections for Board of Supervisors positions were upcoming in August 2011, and the general elections were upcoming in November 2011. But in early February 2011, the United States Census Bureau released data revealing malapportioned supervisor districts in several counties. Consequently, local branches of the National Association for the Advancement of Colored People ("NAACP") and African-American voters brought suit against officials in the malapportioned counties. One complaint was filed per county. Each complaint alleged that the county's supervisor districts violated the Fourteenth Amendment's "one person, one vote" guarantee, and sought declaratory relief and the injunctive relief of delaying election deadlines and the elections so that the county could redistrict before the elections were conducted.

The complaints were dismissed on the grounds of lack of standing and failure to state a claim upon which relief could be granted. Although we conclude that appellants had standing, the elections are over. We ultimately VACATE the orders dismissing the complaints and REMAND for consideration of whether this controversy is moot.

## I

Nine Mississippi counties are involved in this appeal: Adams, Amite, Claiborne, Copiah, Pike, Simpson, Warren, Wayne, and Tallahatchie County. As noted, each county has a Board of Supervisors and maintains five supervisor voting districts. Miss. Const., art. 6, §170; Miss. Code Ann. § 19-3-1. Each district elects one Supervisor every four years; the Supervisors have four-year terms. Miss. Code Ann. § 19-3-1. Each Board of Supervisors establishes the supervisor voting district boundaries for its respective county. Miss. Code Ann. §§ 23-15-281–83. The Boards of Supervisors had adopted their respective

7

supervisor voting district boundaries following the 2000 decennial census. Those boundaries were subsequently pre-cleared by the U.S. Department of Justice.

The 2011 election cycle for Mississippi county supervisors opened with candidate qualifying on January 1, 2011. Candidate qualifying closed on March 1, 2011. Miss. Code. Ann. § 23-15-299(2). After qualifying closed, party qualifying elections were held on August 2, 2011. Runoffs were completed on August 23, 2011. General elections were held on November 8, 2011.

Meanwhile, on February 4, 2011—in the middle of the candidate qualification period—the United States Census Bureau released its official 2010 Mississippi county population data. On February 28, 2011, local NAACP branches and African-American voters brought "one person, one vote" actions in several counties. These complaints alleged that the 2010 Census revealed population changes in the counties that rendered the supervisor districts for the impending Board of Supervisors elections unconstitutionally malapportioned, in violation of the "one person, one vote" guarantee of the Equal Protection Clause of the Fourteenth Amendment. One complaint per county was filed.

Nine of these complaints are relevant to this appeal. Complaints regarding Adams, Amite, Claiborne, Copiah, Pike, Simpson, Warren, and Wayne County were filed in the United States District Court for the Southern District of Mississippi. One complaint, regarding Tallahatchie County, was filed in the United States District Court for the Northern District of Mississippi.[1]

---

[1] Appellants' counsel filed sixteen such "one person, one vote" actions on February 28, 2011. Eight actions were filed in the Southern District, and eight in the Northern District. The eight cases in the Southern District were consolidated. As noted below, the District Court for the Southern District dismissed them and they are before us on appeal. The eight cases in the Northern District were not consolidated. One case—regarding Tunica County—was dismissed and then appealed to this Court, but that appeal was dismissed. Another case—regarding Tallahatchie County—was dismissed and is now before us on appeal. The remaining six cases in the Northern District are not before us.

Apart from these sixteen actions, the Hancock County Board of Supervisors and the Madison County Board of Supervisors sued other divisions of their respective counties on

Nos. 11-60446, 11-60676

Each complaint filed in Adams, Amite, Copiah, Simpson, Wayne, and Tallahatchie was brought by: (1) the local NAACP branch for that county, which the complaint alleged represented members who were voters in districts that were overpopulated and under-represented; (2) an individual African-American voter, but who—according to the complaint—hailed from an *under*populated, *over*-represented district. The original complaint filed in Pike County, however, was brought by an NAACP plaintiff and an individual African-American plaintiff, Reverend Frank Lee, who was alleged to be a voter from an overpopulated, under-represented district. Each original complaint filed in Warren County and in Claiborne County was brought by a local NAACP plaintiff but no individual plaintiff.

All the complaints requested the same relief: a declaratory judgment that the county's apportionment scheme was unconstitutional; an "injunction enjoining the defendants from conducting elections" under the current supervisor district lines; an injunction extending the statutory candidate qualification deadline "for a short period of time in order to give the [county] an opportunity to redistrict" the supervisor district lines and obtain constitutional clearance; an injunction requiring new supervisor district lines to conform to constitutional requirements; attorneys' fees, courts costs; and "general relief."

Each complaint named as defendants the county Board of Supervisors, the county Clerk/Registrar, the county Republican Executive Committee, the county Democratic Executive Committee, and the county Board of Elections Commissioners. On March 25, 2011, the Mississippi Attorney General moved to intervene as a defendant in all the lawsuits, and moved to dismiss all the complaints filed in the Southern District under Rule 12(b)(1) and Rule 12(b)(6).

---

behalf of their voting residents. The District Court for the Southern District dismissed these complaints for lack of standing. Neither the Hancock Board nor the Madison Board appealed that ruling. Those counties are not involved in this appeal.

In late March 2011, the plaintiffs within each county filed a motion to amend their original complaint to include an additional plaintiff: an African-American voter from an overpopulated, under-represented district.

On May 16, 2011, the District Court for the Southern District issued an order dismissing the original complaints for lack of standing under Rule 12(b)(1). Alternatively, the court dismissed the complaints for failing to state a claim upon which relief could be granted under Rule 12(b)(6). The court also denied the plaintiffs' motions to amend their complaints as futile, reasoning that (1) the plaintiffs could not amend their complaints without standing, and (2) even amended complaints would fail to state a claim.

In late June 2011, the plaintiffs timely appealed from the court's May 16 order dismissing their complaints, denying their motions for preliminary and permanent injunctions, and denying their motions to amend their complaints. The plaintiffs also appealed from the court's June 13 orders denying their motions to amend the judgment and their motions for a preliminary injunction and a stay pending appeal.

Meanwhile, the Tallahatchie County case in the Northern District followed a similar course. On September 14, 2011, the District Court for the Northern District issued an order dismissing the case for failure to state a claim. The plaintiffs timely appealed from that judgment. Here on appeal, the cases from the Northern District and the Southern District have been consolidated.

## II

### A

Before we may consider the merits of this consolidated case, we must discharge our "independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "We review all questions of subject matter jurisdiction, including the justiciability issues of standing . . . and mootness, de novo." *Ctr. for Individual Freedom v.*

*Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006). "When," as here, "standing is challenged on the basis of the pleadings, we must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010).

"As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) (internal quotation mark omitted); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). The constitutional elements of standing, which emerge from Article III's insistence on an actual case or controversy, are familiar:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and alterations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (internal quotation marks and alterations omitted); *see also Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) ("At the pleading stage, allegations of injury are liberally construed.").

Notably, to satisfy the third element of redressability—which is critical to this case—the plaintiff must show that the requested relief, if provided, will likely redress the injury-in-fact. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (stating that plaintiff must show a "'substantial likelihood' that the requested relief will remedy the injury in fact"); *accord United States v. Holy Land Found. for Relief & Dev.*, 445 F.3d 771, 780 (5th Cir. 2006); *see also Little v. Shell Exploration & Prod. Co.*, — F.3d — , No. 11-20320, 2012 WL 3089777, at \*2 (5th Cir. July 31, 2012) (stating that plaintiff must show that "a victory in litigation will likely redress the injury"); *Adar v. Smith*, 639 F.3d 146, 150 (5th Cir. 2011) (en banc) ("[A] favorable decision is likely to redress the injury."); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) ("[R]elief from injury must be likely to follow from a favorable ruling.").

Under the doctrine of associational standing, furthermore, an association may have standing to bring suit on behalf of its members when:

> [1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Am. Physicians*, 627 F.3d at 550 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). The first prong of the associational standing test requires that at least one member of the association satisfy the Article III elements and have standing to sue in his or her own right. *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587–88 (5th Cir. 2006); *see also Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("The association must allege that its members, or any one of them, are suffering immediate or threatened injury . . . .").

## B

Applying this framework, we reason that appellants (the plaintiffs below) alleged adequate facts to support standing in their "one person, one vote" actions against appellees (the defendants below). We begin our discussion of standing with the individual plaintiffs; we turn later to the institutional plaintiffs.

It is settled, and the parties agree, that a voter from a district that is overpopulated and under-represented suffers an injury-in-fact. *See Baker v. Carr*, 369 U.S. 186, 205–06 (1962) (observing that "voters who allege facts showing disadvantage to themselves as individuals have standing to sue"); *Reynolds v. Sims*, 377 U.S. 533, 568 (1964) ("[A]n individual's right to vote . . . is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living [i]n other parts . . . ."); *Fairley v. Patterson*, 493 F.2d 598, 603 (5th Cir. 1974) (noting that "sufficient damage through under[-]representation to obtain standing will be inflicted if population equality among voting units is not present").[2]  Inversely, a voter who resides in an *under*populated district cannot properly allege an injury-in-fact. *Fairley*, 493 F.2d at 603 ("[I]njury results only to those persons domiciled in the under-

---

[2] Indeed, appellants alleged maximum deviation percentages of greater than 10% in the nine counties at issue; it is well-settled that if a municipality tolerates an apportionment scheme with a maximum deviation percentage of greater than 10%, then the municipality has *prima facie* violated the "one person, one vote" principle of the Equal Protection Clause and must justify the deviation. *See Connor v. Finch*, 431 U.S. 407, 418 (1977); *Fairley v. Hattiesburg, Miss.*, 584 F.3d 660, 675 (5th Cir. 2009) ("If a population deviance exceeds 10%, it constitutes a prima facie case of invidious discrimination that requires the municipality to prove a legitimate reason for the discrepancy."); *see also Brown v. Thomson*, 462 U.S. 835, 843 (1983); *Mahan v. Howell*, 410 U.S. 315, 325 (1973); *cf. Bd. of Estimate City of N.Y. v. Morris*, 489 U.S. 688, 702 (1989) ("We note that no case of ours has indicated that a deviation of some 78% could ever be justified."). Simply put, a county's maximum deviation percentage is the sum of (1) the percentage by which the district containing the largest population deviates from the average district population and (2) the percentage by which the district containing the smallest population deviates from the average district population.

The alleged maximum deviation percentages for the nine counties are the following: Adams, 39.46%; Amite, 49.05%; Claiborne, 56.17%; Copiah, 40.36%; Pike, 18.86%; Simpson, 26.70%; Warren, 52.74%; Wayne, 30.20%; Tallahatchie, 113.53%.

represented voting districts."). The parties also agree that, with respect to a voter from an overpopulated, under-represented district, there is a causal connection between that voter's injury and the conduct complained of.[3]

The parties disagree, however, on the issue of redressability. Appellees argue that even if the district court had enjoined the qualifying deadlines, other election deadlines, or the elections, "there still would have been no certainty" that any county could complete the redistricting process before the current supervisors' terms expired. As appellees remind us: "New lines had to be drawn, submitted to the public for comment, voted upon, and put through the potentially lengthy process of submission and approval by the Department of Justice." Appellees thus contend that "there was never a guarantee that granting appellants their requested relief would redress their alleged injury."

Still, we find that appellees misconstrue the redressability element of standing. To satisfy redressability, appellants were not required to show that their requested relief would *certainly* redress their injuries; rather, they were required to show that their requested relief would *likely* (or substantially likely) redress their injuries. *See Stevens*, 529 U.S. at 771; *Lujan*, 504 U.S. at 561. Moreover, the proper focus of the redressability inquiry is not whether the relief is likely to be granted; rather, the focus is whether, assuming that the requested relief is granted, that relief will likely redress the plaintiffs' injuries. *See Adar*, 639 F.3d at 150; *Rogers v. Brockette*, 588 F.2d 1057, 1063 (5th Cir. 1979) ("There must be a substantial probability that, if the court affords the relief requested, the plaintiffs' legal injuries will be remedied") (internal quotation marks and

---

[3] The causation element of standing requires appellees to have some connection with the enforcement of the provisions at issue. *See Okpalobi v. Foster*, 244 F.3d 405, 426–28 (5th Cir. 2001) (en banc). The parties agree that the officials named as defendants are responsible for executing the Mississippi elections statutes.

ellipses omitted).[4] Appellees do not dispute that appellants' complaints sought broad relief; appellees concede that appellants sued to declare the current supervisor district lines invalid, enjoin the qualifying deadlines, enjoin the elections, and enjoin the establishment of invalid lines. But this relief, had it been provided, would have very likely, if not unquestionably, redressed the plaintiffs' claimed injuries. If the district court had enjoined the election deadlines and the elections, and the counties had redistricted to generate constitutionally proportional districts, and the elections were then held pursuant to these constitutional districts, the plaintiffs' "one person, one vote" injuries would very likely have been redressed.

We therefore disagree with the district court's holding that appellants did not adequately plead redressability. We conclude that those individual plaintiffs who were voters in overpopulated, under-represented districts adequately alleged facts to satisfy the elements of standing—including redressability.

## C

The parties also disagree on whether the NAACP institutional plaintiffs have associational standing. Appellants argue that the NAACP local branches adequately pleaded facts supporting associational standing because: (1) in each complaint, the NAACP branch pleaded that its members included voters in overpopulated and under-represented districts, thereby alleging that these members were suffering a concrete, particularized, and redressable injury; (2) the interests the NAACP seeks to protect are germane to the purpose of the NAACP; and (3) neither the claim asserted nor the relief requested requires

---

[4] *See also Bonas v. Town of North Smithfield*, 265 F.3d 69, 73 n.4 (1st Cir. 2001) (holding that plaintiffs had satisfied redressability because defendants' challenge "boil[ed] down to an assertion that a federal court cannot, or should not, order the remedy the plaintiffs request," but the plaintiffs' "feared injury [was] the denial of the right to vote should the defendants fail to hold the regularly scheduled election," and "there is little doubt that ordering the Town to hold the election would palliate that alleged transgression").

participation of individual NAACP members.  Sensibly, appellees do not base their justiciability challenge on the second or third element of associational standing.  Maintaining proportional districts, protecting the strength of votes, and safeguarding the fairness of elections are surely germane to the NAACP's expansive mission.  Furthermore, adjudicating a "one person, one vote" claim does not demand factual development about any individual NAACP member; no factual inquiry is necessary beyond the fact that the member is a voter in an overpopulated, under-represented district.  Likewise, to determine whether to grant the requested relief of delaying election deadlines and elections, the district court would not need individualized information about NAACP members. *Compare Am. Physicians*, 627 F.3d at 553 (finding associational standing because plaintiff sought only equitable relief and participation of few members could supply proof of defendant's misdeeds), *with Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (rejecting associational standing because plaintiff's common law tortious interference claims were fact-specific to individual members).

Appellees instead target the first prong of associational standing, arguing that the local NAACP branches did not sufficiently allege injury-in-fact on behalf of their members.  Appellees note that no complaint identified, by name, any member of the local NAACP branch who was a voter from an overpopulated, under-represented district and who thereby suffered a "one person, one vote" injury.  According to appellees, a complaint cannot be said to allege a concrete, particularized injury without setting forth the name of an NAACP member who was allegedly injured; an NAACP branch may not establish associational standing by asserting, in the abstract, that some of its members reside in overpopulated, under-represented districts.  In other words, according to appellees, the NAACP branches must name names.

Nos. 11-60446, 11-60676

Yet appellees offer no authority for the proposition that an NAACP branch must identify a particular NAACP member *at the pleading stage*. We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing. *Cf. Church of Scientology v. Cazares*, 638 F.2d 1272, 1279 (5th Cir. 1981) ("[I]n determining whether an association has standing to bring suit on behalf of its members, neither unusual circumstances, inability of individual members to assert rights nor an explicit statement of representation are requisites.").[5] Additionally, the NAACP branches were not merely alleging that some members *might* suffer a "one person, one vote" violation. The NAACP branches were alleging that some members *were* suffering such a violation. By alleging that some of its members were voters from overpopulated and under-represented districts, the NAACP branches adequately alleged that some of its members were suffering a concrete, particularized injury. We conclude that each NAACP branch adequately pleaded the elements of associational standing.[6]

_____

[5] Persuasive authority from the Second Circuit supports our reasoning. In *Building and Construction Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc.*, the Second Circuit observed the following:

> The defendants' argument that the persons allegedly injured must be identified by name might have some validity if this litigation were at the summary judgment stage. . . . But the Trades Council's contention is unpersuasive on a motion to dismiss, where standing is challenged based on the pleadings alone. . . . An association bringing suit on behalf of its members must allege that one or more of its members has suffered a concrete and particularized injury, as the plaintiffs do. But the defendants cite to no authority—nor are we aware of any—that supports the proposition that an association must 'name names' in a complaint in order properly to allege injury in fact to its members.

448 F.3d 138, 145 (2d Cir. 2006) (citations omitted).

[6] Although appellees' argument against associational standing relies on *NAACP v. City of Kyle, Texas*, 626 F.3d 233 (5th Cir. 2010), that case does not avail them. Kyle changed its zoning ordinances, which caused the cost of entry-level, single-family residences to increase; the NAACP plaintiffs alleged that this increase would disparately impact African-Americans and Hispanics. *Id.* at 236. We held that the NAACP lacked associational standing principally

Nos. 11-60446, 11-60676

Overall, we hold that the NAACP plaintiffs and any individual plaintiff who is alleged to be a voter in an overpopulated, under-represented district has adequately alleged facts supporting standing. We disagree with those portions of the district court orders dismissing the complaints for lack of standing.

### III

Although we have considered one component of our subject matter jurisdiction—standing—the passage of time and the passing of the elections compels us now to consider a related component of our subject matter jurisdiction: mootness. "Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)." *La. Envt'l Action Network v. City of Baton Rouge*, 677 F.3d 737, 743 (5th Cir. 2012) (citation omitted). "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Id.* As stated, "[w]e review questions of federal jurisdiction de novo, including arguments that a case or controversy has become moot." *Id.*

Appellees, on one hand, argue that appellants' claims are moot. To be sure, the completion of the elections has arguably mooted the claims for injunctive relief to enjoin election deadlines and elections. "Generally, a request for an injunction is moot upon the happening of the event sought to be enjoined." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (internal quotation marks omitted); *accord Harris v. City of Hous.*, 151 F.3d 186, 189 (5th Cir. 1989).

---

because "the alleged injury [was] neither concrete nor imminent," as there was "no evidence showing when and how the revised ordinances may deprive a NAACP member of the opportunity to acquire a new residence in Kyle." *Id.* at 237. *City of Kyle* is distinguishable not only because of the difference in procedural posture, but also because an allegation that an NAACP member is a voter in an overpopulated, under-represented district *is* an allegation of a concrete, imminent injury.

Nos. 11-60446, 11-60676

Appellants, on the other hand, urge that this controversy is live. First, appellants argue that this case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. Under this exception, a party may save an otherwise moot claim by showing that: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Appellants declare: "[E]very twenty years the parties and courts will be faced with the same election cycle when census data and elections happen in the same year." Second, appellants argue that meaningful relief is still available and that, accordingly, the controversy remains live. According to appellants, the completion of the elections has not mooted their claims for declaratory relief or for general relief. Moreover, they are still suffering a "one person, one vote" injury, which would be remedied by invalidating the elections conducted pursuant to malapportioned districts and ordering remedial elections after redistricting is finished.[7]

But as appellees counter, "a court will only invalidate an election in exceptional circumstances, usually when there has been an egregious defiance of the Voting Rights Act." *Wilson*, 667 F.3d at 597 (internal quotation marks omitted); *accord Lopez v. City of Hous.*, 617 F.3d 336, 340 (5th Cir. 2010).[8]

---

[7] *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–13 (observing that "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, that appeal must be dismissed," but holding that the "availability" of a "possible remedy" was sufficient "to prevent this case from being moot").

[8] *But see Taylor v. Monroe Cnty. Bd. of Supervisors*, 421 F.2d 1028, 1039 (5th Cir. 1979) (remanding to trial court to decide whether special elections were necessary after plaintiffs sued based on extreme malapportionment of Mississippi supervisor districts but trial court allowed elections to proceed); *Keller v. Gilliam*, 454 F.2d 55, 57 (5th Cir. 1972) (ordering special elections after census revealed extreme malapportionment and plaintiffs brought "one

19

Although the VRA is not at issue in this case, the point remains that appellants have not alleged that appellees have acted egregiously or in bad faith. This controversy, according to appellees, was simply a product of bad timing. Given the mobility of modern populations, every decennial census will inevitably shatter the fiction that districts have remained perfectly proportional since the last decennial census. When census data is released just before an election, latent malapportionment will rear its ugly head, notwithstanding the absence of foul play. Or so one could argue.

Based on the record before us, however, we are unable to determine whether this controversy is live. To illustrate, because the district court has not evaluated mootness in the first instance, we lack access to factual findings with which to determine whether the "capable of repetition, yet evading review" exception to mootness is applicable to this case. Although we could assume that this controversy will reoccur every twenty years when the election cycle and census publication coincide, we decline the invitation to engage in such speculation. *Cf. Libertarian Party v. Dardenne*, 595 F.3d 215, 217–19 (5th Cir. 2010) (relying on evidence developed in district court to affirm district court's order that rejected applicability of "capable of repetition, yet evading review" exception and that dismissed case as moot); *Osborne v. Coleman Co., Inc.*, 592 F.2d 1239, 1241 (5th Cir. 1979) (remanding for mootness determination because "the court below has never considered the effect" of the arguably mooting event "upon the instant appeal"); 13C Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 3533.10.3 (3d ed. 2012) ("If the appellate court is unsure of the facts, it is common to remand for consideration of mootness by the lower courts."). Indeed, the district court has had no opportunity to consider this case in its post-election posture. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d

---

person, one vote" action to enjoin upcoming Mississippi supervisor elections but district allowed elections to proceed).

249, 263 (5th Cir. 2005) (noting that "the normal procedure where the lower court has not considered a pertinent issue is to remand a case"); *Boire v. Miami Herald Pub. Co.*, 343 F.2d 17, 25 (5th Cir. 1965) (noting the principle that "a reviewing court should remand a case to the district court for consideration of a question not previously considered there").

In an abundance of caution, and because more factual development is needed, we remand this consolidated case to the district court so that it can determine whether this controversy is moot or is live. If the district court determines that this controversy is moot, the court must dismiss the case. If the district court determines that this controversy is live, the court must proceed to determine whether appellants' complaints—after allowing for proper amendments—adequately state a claim upon which *post-election* relief can be granted. Of course, new pleadings will be necessary; we do not forbid new counts. But if the district court determines that the appellants' complaints have failed to state a claim for post-election relief, the court must dismiss the case.

At this time, then, we do not address those portions of the district court orders dismissing the complaints based on their failure to state a claim. We cannot leapfrog the justiciability inquiry to reach the merits of this case.[9]

**IV**

---

[9] We note that appellants also appeal from the order by the district court denying their motions to amend their complaints to add individual plaintiffs from overpopulated, under-represented districts. The court denied those amendments as futile because the court reasoned that (1) the plaintiffs could not amend their complaints without standing and (2) even amended complaints would fail to state a claim.

Normally, we review the denial of leave to amend a complaint for abuse of discretion. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002). And, as we explained, we disagree with the district court that the additional plaintiffs would not have satisfied redressability. However, because we cannot yet determine whether appellants' complaints have stated a claim upon which relief could be granted, we cannot yet review whether the court abused its discretion in denying the amendments.

For the foregoing reasons, we VACATE the district court orders dismissing the complaints, and we REMAND the consolidated case to the United States District Court for the Southern District of Mississippi for consideration of mootness in accordance with this opinion.

**VACATED and REMANDED**.