**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 18, 2009

Charles R. Fulbruge III
Clerk

No. 09-60272
consolidated with
No. 09-60424

BRIAN MOORE,

                                    Plaintiff-Appellant,

versus

DELBERT HOSEMANN,
in His Official Capacity as Mississippi Secretary of State,

                                    Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before JONES, Chief Judge, SMITH and DeMOSS, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Brian Moore sued the Mississippi Secretary of State (the "Secretary") after being left off that state's 2008 presidential ballot. The district court dismissed the suit as moot and denied Moore's motion for costs and fees under Federal Rule of Civil Procedure 4(d)(2). We reverse the dismissal and remand because,

although the case is not moot, we must abstain. Moore's challenge, like many election disputes, is based on an interpretation of uncertain state law, which should be resolved at the state level before we consider wading into a constitutional thicket. We affirm the denial of costs and fees.

## I.

Moore was the 2008 presidential candidate for the Socialist Party USA and was also selected as the Natural Law Party's presidential candidate on the Mississippi ballot. Mississippi law requires all presidential candidates to submit their qualifying papers to the Secretary "not less than sixty days previous to the day of the election." MISS. CODE ANN. § 23-15-785(2). For the 2008 election, the sixty-day deadline fell on Friday, September 5. The statute does not explicitly provide a specific time of day by which a candidate's papers must be filed on the due date, but in accordance with another statute, the Secretary's office closes at 5:00 p.m.

On September 5, shortly after 5:00 p.m., taxi drivers hired by Moore arrived at the Secretary's office to deliver Moore's papers, but the office had closed. The drivers deposited Moore's papers at the doorstep and left. Because Moore did not meet the filing deadline, his name was left off the ballot.[1]

On September 16, Moore sued Delbert Hosemann in his official capacity as Secretary, seeking a preliminary injunction to certify Moore for the presidential ballot and a preliminary and permanent injunction to prevent the Secretary from enforcing any unauthorized deadlines for ballot qualification of presidential candidates. Moore argued that his constitutional rights were violated when the Secretary imposed the deadline without express legislative authority. The district court denied Moore's request for a preliminary injunction on September 29.

---

[1] Moore's vice-presidential running mate, Stewart Alexander, and the Natural Law Party were also parties. Moore alone appeals.

We subsequently denied Moore's motion for a stay and preliminary injunction. Moore appealed the denial of an injunction to this court but voluntarily withdrew his appeal after the election had occurred.

Though the opportunity for an injunction had ended, Moore continued to seek a declaratory judgment that the 5:00 p.m. deadline was unconstitutional. The district court granted the Secretary's motion to dismiss the complaint as moot under Federal Rule of Civil Procedure 12(c). In response to Moore's argument that his claim fell under the "capable of repetition, yet evading review" exception to mootness, the court found that there was no "reasonable expectation" or "demonstrated probability" that Moore or any other Natural Law Party presidential candidates would "again miss what they now know to be the 5:00 p.m. deadline" for filing. The court recognized that this circuit has applied the mootness exception when other individuals in the political process might challenge a law, but held that in the present matter it did "not seem reasonably likely that other prospective presidential/vice-presidential candidates will fail to timely file their qualifying papers before . . . the office closes at 5:00 p.m."

Moore moved for costs and fees pursuant to Federal Rule of Civil Procedure 4(d) on the theory that the Secretary had not satisfied a mandatory requirement to waive service. The district court denied the motion.

On appeal, Moore renews his arguments that his claim falls under the "capable of repetition, yet evading review" exception and that the 5:00 p.m. deadline is unconstitutional. Specifically, Moore contends that the Secretary exceeded his authority in violation of Article II, § 1, cl. 2 of the United States Constitution, which provides that each state shall choose presidential electors "in such manner as the *Legislature* thereof may direct." (Emphasis added.) The upshot of the unauthorized deadline, says Moore, is that Mississippi violated his and voters' First and Fourteenth Amendment rights to participate in the political process.

Moore also appeals the denial of his motion for costs and fees.[2]


## II.

We first address whether this case is nonjusticiable because the completion of the election renders it moot. We review questions of subject matter jurisdiction, including the justiciability issue of mootness, *de novo*. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

Mootness is "the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom*, 449 F.3d at 661. The Secretary contends that such is the case here, that the occurrence of the November 2008 election means that Moore can no longer seek meaningful redress for the constitutional violations he alleges.

An important exception to the mootness doctrine, however, is "attacks on practices that no longer directly affect the attacking party, but are 'capable of repetition' while 'evading review.'" *Alvarez v. Smith*, No. 08-351, 2009 U.S. LEXIS 8941, at *10-*11 (U.S. Dec. 8, 2009) (citing *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). To invoke that exception, a party must show that "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right to Life,* 551

---

[2] Two appeals were docketed: No. 09-60272, the appeal of the dismissal as moot; and No. 09-60424, the appeal of the dismissal of the motion for costs and fees. The appeals have been consolidated.

U.S. at 462.

Moore satisfies the first prong: Election controversies are paradigmatic examples of cases that cannot be fully litigated before the particular controversy expires. *See Ctr. for Individual Freedom*, 449 F.3d at 661. We turn then, to the second prong. There is good reason to suppose that Moore might fail that requirement, because he has not averred that he is likely to run for President again.

Following the lead of the Supreme Court, however, in election cases we have applied the second prong somewhat loosely. In *Center for Individual Freedom*, *id.* at 662, we held that "even if it were doubtful" that the plaintiff would again be affected by the allegedly offending election statute, "precedent suggest[ed] that [the] case [was] not moot, because other individuals certainly [would] be affected by the continuing existence" of the statute.[3] It is true that the Supreme Court's most recent election law decisions, *Davis v. FEC*, 128 S. Ct. 2759 (2008), and *Wisconsin Right to Life* both noted that the plaintiffs had alleged they would again be adversely affected by the complained-of law. But the Court still "has not . . . dismissed an election case as moot where the plaintiff failed to allege that he would be governed by the same flawed law in the next election." *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009). Thus, we remain "unwilling to dismiss [a] case as moot when 'the issues properly presented, and their effects . . . will persist as the [restrictions] are applied in future elections.'" *Id.* at 165 (citing *Storer*, 415 U.S. at 737 n.8).

That is the situation here. The Secretary has made it plain that he intends to enforce the 5:00 p.m. deadline in future elections. He adds that the chance is very small that Moore or any other presidential candidate will miss the

---

[3] *Cf. Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) ("The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections.").

deadline again. That is beside the point, however. As long as the complained-of deadline is in place, future candidates in Mississippi will be subject to it and will need to conform to its demands. Thus, the effects of the deadline will persist. Given the election law context, Moore's complaint satisfies both prongs of the mootness exception.

## III.

Although Moore's constitutional claim survives mootness, we decline to reach the merits. Instead, we remand and urge the district court to consider whether to abstain on the basis of *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941).

In *Pullman*, plaintiffs challenged, on both federal constitutional and state law grounds, the authority of the Texas Railroad Commission to issue a racially discriminatory order. The Supreme Court abstained from deciding the case, because it found that if Texas courts were to strike down the Commission's action on state law grounds, it would be unnecessary to decide the federal constitutional question.

As the Court later explained, the moral of *Pullman* was that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229 (1984) (quoting *Pullman*, 312 U.S. at 500). "[F]or *Pullman* abstention to be appropriate . . . it must involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question." *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Committee*, 283 F.3d 650, 653 (5th Cir. 2002). In other words, "[g]eneral-

ly, *Pullman* abstention is appropriate only when there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." *Baran v. Port of Beaumont Nav. Dist.*, 57 F.3d 436, 442 (5th Cir. 1995).

*Pullman* abstention is appropriate here. Moore challenges the Secretary's official actions on federal constitutional grounds. He alleges that by enforcing the 5:00 p.m. deadline without express direction from the legislature, the Secretary devised his own manner of appointing presidential electors, in violation of Article II. As a result, Moore claims, his First and Fourteenth Amendment rights to political participation were violated.

Moreover, the existence of a federal constitutional question is entirely contingent on an unresolved interpretation of Mississippi law. The Secretary argues that by closing his office at 5:00 p.m. he was not creating election rules, but merely following the existing laws enacted by the legislature. He points to provisions of the Mississippi Code that provide for regular office hours. All state offices, for example, are required to operate between 8:00 a.m. and 5:00 p.m., and the Secretary is required to operate eight hours each weekday. *See* MISS. CODE ANN. §§ 25-1-98, 7-3-3. In the Secretary's view, then, he did not add to, or even interpret, the sixty-day deadline in § 23-15-785(2), but rather complied with the strict letter of three interrelated state statutes.

Moore contends that, to the contrary, because § 23-15-785(2) does not contain its own mention of a closing time, the Secretary was required to keep his office open until midnight on September 5. Moore points out that a number of other Mississippi election statutes do mention 5:00 p.m. filing deadlines and that presidential absentee ballots have a later receipt deadline than do ballots for other offices.[4]

---

[4] *See* MISS. CODE ANN. §§ 23-15-299(3), 23-15-309(1), 23-15-359(3), 23-15-361(1), 23-15-
(continued...)

The question of state law here is at least––and perhaps even more than–– "fairly subject" to the Secretary's understanding. We abstain from deciding this question of state law prematurely, however, because an authoritative answer from the Mississippi courts in the Secretary's favor would also dispose of any federal constitutional question. We therefore remand the constitutional claim to the district court and urge it, likewise, to consider whether to abstain.

## IV.

Moore claims he is entitled to costs and fees under rule 4(d), which requires certain defendants, upon request, to waive service, and which allows plaintiffs to cover expenses related to service if the defendant does not waive. The district court found that Moore's motion for costs and fees was without merit. We agree.

Rule 4's mandatory waiver provisions apply only to "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h)." FED. R. CIV. P. 4(d)(1). State governments, municipal corporations, and "other state-created governmental organization[s]," along with the federal government and foreign sovereigns, are not subject to mandatory waiver. As the 1993 Advisory Committee Note to rule 4(d) explains:

> The United States is not expected to waive service for the reason that its mail receiving facilities are inadequate to assure that the notice is actually received by the correct person in the Department of Justice. The same principle is applied to agencies, corporations, and officers of the United States and to other governments and entities subject to service under subdivision (j). Moreover, there are policy reasons why governmental entities should not be confronted with the potential for bearing costs of service in cases in which they

[4] (...continued)
721(3), 23-15-807(e), 23-15-637.

ultimately prevail.

Moore argues that the Secretary, even when sued in his official capacity, should be considered an "individual" for purposes of rule 4's mandatory waiver provision. He is incorrect. The Advisory Committee Note expressly states that the rationale for shielding the United States from the mandatory waiver-of-service provisions also applies to its "agencies, corporations, and officers" and similarly "to other governments and entities subject to service under subdivision (j)." Although neither the rule nor the Advisory Committee note attempts to define which state "entities" are similarly shielded from the mandatory waiver provisions, the most reasonable reading of rule 4 affords state officers facing official capacity suits the same consideration given to federal officers in the same position.

Nor is Moore's reliance on First Circuit caselaw persuasive. In two instances, that circuit held that state officials sued in their individual capacities should receive process as individuals under rule 4(e) (and its predecessor) rather than as state government entities under rule 4(j). *See Echevarria-Gonzales v. Gonzales-Chapel*, 849 F.2d 24 (1st Cir. 1988); *Caisse v. DuBois*, 346 F.3d 213 (1st Cir. 2003). Neither *Echevarria* nor *Caisee*, however, addressed whether a state official was subject to mandatory waiver obligations under rule 4(d); instead, both cases concerned whether plaintiffs had made adequate service on state official defendants. For the reason stated above, we disagree with the First Circuit's reading of rule 4, at least insofar as the First Circuit's reasoning subjects state officers to the mandatory waiver provisions of the rule.[5]

A number of other courts have held that state officers sued in their official

---

[5] The parties placed great emphasis on the holding in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) that, for the purposes of a 42 U.S.C. § 1983 action for money damages, "a suit against a state official in his or her official capacity is a suit against the official's office," and also on the *dictum* that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983." *Will*, 491 U.S. at 71, 71 n.10. This emphasis on *Will* is misplaced. The question here is not about the definition of a "person" under § 1983, but rather the definition of an "individual" under rule 4.

capacities are subject to service under rule 4(j) or its predecessor.[6] We join them in saying that a state official sued in his official capacity is not subject to the mandatory waiver-of-service provisions of rule 4(d). Thus, we affirm the dismissal of Moore's motion for costs and fees.

For the reasons explained, the judgment is AFFIRMED in part and REVERSED and REMANDED in part.

---

[6] *See, e.g.*, *Libertarian Party v. Dardenne*, 2009 WL 790149, at *5 (M.D. La. Mar. 24, 2009); *Mack v. Fox*, 2008 WL 4832995, at *3 (M.D.N.C. Nov. 4, 2008); *Chapman v. N.Y. State Div. for Youth*, 227 F.R.D. 175, 179-80 (N.D.N.Y 2005); *Randall v. Crist*, 2005 WL 5979678, at *2 (N.D. Fla. Nov. 1, 2005); *Gaynor v. Martin*, 77 F. Supp. 2d 272, 282 (D. Conn. 1999); *Banerjee v. Roberts*, 641 F. Supp. 1093 (D. Conn. 1986).