# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 21, 2016          Decided April 26, 2016

No. 15-5120

LAURA HOLMES AND PAUL JOST,
APPELLANTS

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01243)

*Allen Dickerson* argued the cause for appellants. With him on the briefs was *Tyler Martinez.*

*Erin Chlopak*, Acting Assistant General Counsel, Federal Election Commission, argued the cause for appellee. With her on the brief were *Daniel A. Petalas*, Acting General Counsel, *Kevin Deeley*, Acting Associate General Counsel, and *Steve N. Hajjar* and *Charles Kitcher*, Attorneys.

Before: GARLAND,[*] *Chief Judge*, HENDERSON, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge.*

---

[*] Chief Judge Garland was a member of the panel at the time the case was argued but did not participate in this opinion.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: Anyone eligible to vote in a Presidential election may bring an action in "the appropriate district court" to determine whether "any provision" of the Federal Election Campaign Act is unconstitutional. 52 U.S.C. § 30110. If the requirements of Article III of the Constitution are satisfied, the district court must "immediately" "certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved . . . sitting en banc." *Id.*

Laura Holmes and her husband, Paul Jost, are eligible voters residing in Florida. They sued the Federal Election Commission claiming that a provision of the Act violated the First and Fifth Amendments to the Constitution. The district court, after a thorough recital of facts not in dispute,[1] declined to certify any questions and granted the Commission's motion for summary judgment on the ground that plaintiffs' arguments were frivolous because they were inconsistent with "settled law." *Holmes v. Fed. Election Comm'n*, 99 F. Supp. 3d 123, 124, 149 (D.D.C. 2015). The question on appeal is whether, instead, the district court should have certified the constitutional questions raised in the complaint to the en banc court of appeals.

---

[1] The district court initially certified both of plaintiffs' questions to this court sitting en banc. *Holmes v. Fed. Election Comm'n*, No. 14-1243, 2014 WL 6190937, at *3-4 (D.D.C. Nov. 17, 2014). At the suggestion of the Federal Election Commission, the court remanded the case so that the district court could develop "the factual record necessary for en banc review." *Holmes v. Fed. Election Comm'n*, No. 14-5281 (D.C. Cir. 2014) (order granting remand).

3

I

The Federal Election Campaign Act prohibits people from making contributions "to any candidate" for "any election for Federal office which, in the aggregate, exceed [$2,600]."[2] 52 U.S.C. § 30116(a)(1)(A). The contribution limit applies "separately with respect to each election," 52 U.S.C. § 30116(a)(6), as a result of which a person may contribute $2,600 to a candidate for each "general, special, primary, or runoff election" in which the candidate participates. 52 U.S.C. § 30101(1)(A). Plaintiffs believe that this "per-election" provision violates the First and Fifth Amendments.

In 2014, each plaintiff wanted to contribute $5,200 to a Congressional candidate during the general election campaign. Plaintiffs could not do so because that amount exceeded the $2,600 per-election limit. Neither plaintiff contributed to his or her candidate during the primary election campaign. Plaintiffs explain that they are "interested principally in supporting the ultimate nominee[s] from [their] party."

Plaintiffs sought a declaratory judgment that the Act's per-election limit is unconstitutional as applied to their contributions, and an injunction forbidding the Commission from enforcing that limit. They argued that § 30116(a)(6) of the Act violates the First Amendment's protection of free speech because the per-election structure "serves no anti-corruption purpose . . .." They also claimed that § 30116(a)(6) violates the Fifth Amendment's guarantee of equal protection when "a

---

[2] During the course of this litigation the contribution limits, which are indexed for inflation, rose from $2,600 to $2,700. *See* Price Index Adjustments for Contribution and Expenditure Limitations, 78 Fed. Reg. 8530, 8532 (Feb. 6, 2013); 80 Fed. Reg. 5750, 5751 (Feb. 3, 2015).

candidate who faces a primary challenge competes in the general election against a candidate who ran unopposed or virtually unopposed during the primary."[3]

The district court ruled "that no constitutional questions warrant[ed] certification [under § 30110] because the plaintiffs' claims involve questions of settled law." *Holmes*, 99 F. Supp. 3d at 149. In addition to declining to certify plaintiffs' constitutional issues to the en banc court of appeals, the district court granted the Commission's motion for summary judgment on the merits and dismissed plaintiffs' claims. *Id.*

Plaintiffs appeal only the district court's decision not to certify their constitutional questions.

II

Under § 30110, district courts do not certify "frivolous" constitutional questions to the en banc court of appeals. *Cal. Med. Ass'n v. Fed. Election Comm'n*, 453 U.S. 182, 192 n.14 (1981). The role of the district court is similar to that of "a single judge asked to seek convening of a three-judge court under 28 U.S.C. § 2284 . . . ." *Clark v. Valeo*, 559 F.2d 642, 645

---

[3] In the district court, but not in this court, the Commission argued that the case was moot because the elections were over. The district court decided – and we agree – that the case fits "the established exception to mootness for disputes capable of repetition, yet evading review." *Holmes*, 99 F. Supp. 3d at 138 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). Plaintiffs' claims could not "be fully litigated before the [elections concluded]," *id.* (quoting *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009)), and there was "a reasonable expectation [the plaintiffs] will again be subject to [the Act's] per-election contribution limit" because they had "aver[red] that they intend to make such contributions in the future." *Id.* at 139.

n.2 (D.C. Cir. 1977) (per curiam), *aff'd sub nom. Clark v. Kimmitt*, 431 U.S. 950 (1977).  The single judge in such a case may refuse to convene a three-judge court if the plaintiff's claims are "wholly insubstantial," "obviously frivolous," and "obviously without merit*." Shapiro v. McManus*, 136 S. Ct. 450, 456 (2015) (quoting *Goosby v. Osser*, 409 U.S. 512, 518 (1973)).  These phrases, the Court wrote in *Shapiro*, set a "low bar."  *Id.*; *see, e.g.*, *Indep. Inst. v. Fed. Election Comm'n*, No. 14-5249, 2016 WL 790894 (D.C. Cir. Mar. 1, 2016).[4]

This brings us to plaintiffs' contention that § 30116(a)(6) violates the First Amendment.  Their argument begins with the proposition that the "right to participate in democracy through political contributions is protected by the First Amendment . . .." *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1441 (2014) (plurality opinion). This "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).  To protect this First Amendment right, limitations on campaign contributions are unconstitutional unless they target "*quid pro quo* corruption or its appearance"; *quid pro quo* in this context "captures the notion of a direct exchange of an official act for money."  134 S. Ct. at 1441 (internal quotation marks omitted).  The linchpin of plaintiffs' argument is that contributing $5,200 to a candidate in a general election in one lump sum cannot be considered corrupting because Congress determined that contributing $5,200 to a candidate in two installments ($2,600 for a primary election and

---

[4] In *Judd v. Fed. Election Comm'n*, 304 F. App'x 874, 875 (D.C. Cir. 2008) (per curiam), we also analogized the district court's role under § 30110 to that of a district court in dismissing *in forma pauperis* claims that are "frivolous or malicious" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i).  *See Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989).

$2,600 for a general election) is not corrupting. In support, plaintiffs invoke the *McCutcheon* plurality's statement that "Congress's selection of a $5,200 base limit indicates its belief that contributions of that amount or less do not create a cognizable risk of corruption." *Id.* at 1452; *see also id.* at 1442, 1448, 1451. The district court may be correct that *McCutcheon*'s repeated references to a "$5,200" contribution limit were just "shorthand . . . dicta" to describe the combined limit "for the primary and general elections." *Holmes*, 99 F. Supp. 3d at 145. But then again, it may be that plaintiffs are correct in treating those references as support for their position. We do not take sides on the merits of the dispute. It is enough to say that plaintiffs' argument is not "obviously frivolous" or "obviously without merit." *Shapiro*, 136 S. Ct. at 456.

The district court nevertheless declined to certify the First Amendment issue on the ground that plaintiffs' argument contradicted "settled law." *Holmes*, 99 F. Supp. 3d at 146, 149. This standard derives from a footnote in *Cal. Med.*, 453 U.S. at 192 n.14, a case arising under the predecessor to § 30110. But it is unclear whether the Supreme Court was referring to "settled" questions of constitutional law or statutory interpretation. Earlier in the footnote the Court spoke of cases in which "the resolution of unsettled questions of statutory interpretation may remove the need for constitutional adjudication." *Id.* Toward the end of the footnote, the Court mentioned that the parties had not suggested that the statute at issue could be interpreted to avoid the constitutional issue, to which the Court added that the issues in the case were neither "insubstantial nor settled." *Id.*[5]

---

[5] Dicta in *Wagner v. Fed. Election Comm'n*, 717 F.3d 1007, 1009 (D.C. Cir. 2013) (per curiam), stated that "the district court must determine whether the constitutional challenges are frivolous or involve settled legal questions," citing *inter alia* the footnote in the

The Court's footnote raises several problems. For instance, which court or courts must have "settled" the constitutional issue? Suppose a panel of the court of appeals has rendered a decision contrary to plaintiffs' claims. Would that constitute settled law? The district courts in the circuit would be bound to follow the appellate panel's decision, as would other three-judge panels in the circuit. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). Yet district court certification under § 30110 is to the en banc court of appeals, which has the authority to overrule not only a panel's decision but also a previous en banc decision. *See id.*

Suppose instead that "settled law" refers only to decisions of the Supreme Court. *See, e.g.*, *Cal. Water Serv. Co. v. City of Redding*, 304 U.S. 252, 255 (1938) (per curiam) ("The lack of substantiality in a federal question may appear . . . because its unsoundness so clearly results from the previous decisions of *this Court* as to foreclose the subject." (italics added)). This would make some sense, because the en banc court must adhere to a Supreme Court decision that is directly on point even if

---

Supreme Court's *Cal. Med.* opinion. The statement was dicta because *Wagner* presented no such issue. The plaintiffs had disclaimed jurisdiction under § 30110 and instead "invoke[d] only the district court's federal question jurisdiction" under 28 U.S.C. § 1331. *Id.* Our court held that § 30110's jurisdiction was exclusive and therefore remanded the case. *See id.* at 1015-17. After the district court complied with § 30110, we issued a detailed and lengthy en banc opinion rejecting plaintiffs' claims on the merits. *See Wagner v. Fed. Election Comm'n*, 793 F.3d 1 (D.C. Cir. 2015) (en banc), *cert. denied sub nom. Miller v. Fed. Election Comm'n*, 136 S. Ct. 895 (2016). The nature and length of our en banc opinion shows that the issues in *Wagner* were not "settled law." Neither of the two questions the district court certified dealt with "settled law," and, in contrast to the present case, the Federal Election Commission in *Wagner* did not argue otherwise.

there are persuasive arguments against it. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). From this, one might conclude that under § 30110, a district court should decline to certify a question if the Supreme Court precedent is so "settled" that the plaintiff would surely lose in the en banc court. *See, e.g.*, *Khachaturian v. Fed. Election Comm'n*, 980 F.2d 330 (5th Cir. 1992) (en banc) (per curiam); *Goland v. United States*, 903 F.2d 1247, 1257-58 (9th Cir. 1990).

But what may appear to be "settled" Supreme Court constitutional law sometimes turns out to be otherwise.[6] *McCutcheon* and *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), may be seen as examples of the Court disagreeing with "settled law" in the context of federal campaign finance law. The dissenters in both cases certainly thought so. *See McCutcheon*, 134 S. Ct. at 1465 (Breyer, J., dissenting) ("Today a majority of the Court overrules [the Court's previous] holding."); *Citizens United*, 558 U.S. at 394 (Stevens, J., concurring in part and dissenting in part) ("The majority's approach to corporate electioneering marks a dramatic break from our past."). These cases, and others, illustrate an important point not captured in the "settled law" idea: it is entirely possible to mount a non-frivolous argument

---

[6] *See, e.g.*, GEORGE COSTELLO, CONG. RESEARCH SERV., RL33172, THE SUPREME COURT'S OVERRULING OF CONSTITUTIONAL PRECEDENT: AN OVERVIEW (2005); *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406-08 (1932) (Brandeis, J., dissenting) ("[I]n cases involving the Federal Constitution, where correction through legislative action is practically impossible, this Court has often overruled its earlier decisions. The Court bows to the lessons of experience and the force of better reasoning, recognizing that the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function.")

against what might be considered "settled" Supreme Court constitutional law.  The Federal Rules of Civil Procedure specifically recognize such a prospect.  Under Rule 11(b)(2), attorneys may not be sanctioned for presenting a "nonfrivolous argument for extending, modifying, or reversing existing law . . .."  FED. R. CIV. P. 11(b)(2); *see also Burns v. George Basilikas Tr.*, 599 F.3d 673, 677 (D.C. Cir. 2010) (quoting FED. R. CIV. P. 11 advisory committee's notes to 1993 amendments).

We therefore do not think a district court may decline to certify a constitutional question simply because the plaintiff is arguing against Supreme Court precedent so long as the plaintiff mounts a non-frivolous argument in favor of overturning that precedent.  That the plaintiff will be fighting a losing battle in the lower courts does not necessarily make the question "obviously frivolous," or "wholly insubstantial," or "obviously without merit."  *Shapiro*, 136 S. Ct. at 456.  The plaintiff has to raise the question to ensure that it is preserved for Supreme Court review.  *See Yee v. City of Escondido*, 503 U.S. 519, 533 (1992).  And certifying the question fulfills § 30110's evident purpose of accelerating potential Supreme Court review.  *See Cal. Med.*, 453 U.S. at 191; *see also Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 593 (1980).

Given our statement in *Wagner*, *see* note 5 *supra*, and the uncertain meaning of the footnote in *Cal. Med.*, we cannot fault the district court for invoking "settled law" in declining to certify plaintiffs' First Amendment question under § 30110. *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), supposedly did the settling.  Although *Buckley* did not specifically "address the constitutionality of setting contribution limits on a per-election basis," the district court found that the Supreme Court "contemplated and approved" the Act's per-election contribution limits.  *Holmes*, 99 F. Supp. 3d at 144.

We do not share this view of *Buckley*. In more than 200 pages of the majority opinion and dissents, the Justices writing in *Buckley* mentioned the "per-election" structure only a handful of times, and each time merely to "summarize[]" or define the contribution limits provision in the Act. 424 U.S. at 7; *see, e.g.*, *id.* at 24. In nearly 800 pages of briefs, this structure is mentioned only for that same limited purpose.[7] The absence of any analysis of the First Amendment question plaintiffs raise in this case is not surprising. Of the 28 constitutional questions the district court certified in *Buckley*, none touched upon the subject. *See Buckley v. Valeo*, 519 F.2d 821, 898-901 (D.C. Cir. 1975) (en banc) (per curiam), *aff'd in part, rev'd in part*, 424 U.S. 1, *and modified*, 532 F.2d 187 (D.C. Cir. 1976).[8]

Even if the Supreme Court had "contemplated and approved" the per-election contribution limit, as the district court thought, that is not the proper standard under § 30110. Plaintiffs' First Amendment question need not be certified if their arguments "fail[] to raise a substantial federal question for jurisdictional purposes." *Shapiro*, 136 S. Ct. at 455. A few

---

[7] *See Buckley v. Valeo*, 424, U.S. 1 (1976) (Nos. 75-436 & -437), Brief of the Appellants, 1975 WL 173792; Brief for the Attorney General as Appellee, 1975 WL 412237; Reply Brief of the Appellants, 1975 WL 171458; *see, e.g.*, Brief for the Attorney General and the Federal Election Commission, 1975 WL 171459, at *6 ("Individuals are . . . restricted to $1,000 per election (or primary) to any particular candidate."); Brief for Appellees Center for Public Financing of Elections, 1975 WL 171457, at *113 ("The [Act] permit[s] individuals to contribute $1,000 per candidate per election . . ..").

[8] The closest is Question 3, which asked whether the "statutory limitation" on "the amounts that individuals or organizations may contribute or expend in connection with elections for federal office" violates the First Amendment. *Id.* at 898. But nowhere does this question even mention that the limit applies on a per-election basis.

scattered references to the per-election structure in *Buckley* with no discussion of its constitutionality do not reach this threshold. Take, for instance, the plurality opinion in *McCutcheon* holding the Act's aggregate contribution limit unconstitutional under the First Amendment. 134 S. Ct. at 1442. The plurality determined that *Buckley* did not control because the aggregate limit "had not been separately addressed at length by the parties," and because the *Buckley* opinion had "spent a total of three sentences analyzing that limit." *Id.* at 1446. Whatever superficial analysis the aggregate limit received in *Buckley*, the per-election structure received even less. The constitutionality of the Act's per-election structure is by no account "settled law."

As to plaintiffs' Fifth Amendment claim, they argue that because the candidates they supported faced primary opposition and then competed in general elections against candidates who had faced no primary opposition, the Act "artificially favors some contributors . . . over others." This effect, they say, results from Commission regulations permitting candidates to transfer unused primary contributions to general election campaigns if those contributions were "made before the primary election." 11 C.F.R. § 110.1(b)(5)(ii)(B)(1); *see also* 11 C.F.R. § 110.3(c)(3). Therefore, according to plaintiffs, "a contributor who gives $5,200 in earmarked contributions [($2,600 for the primary election, $2,600 for the general election)] the day before a primary election may functionally give $5,200 for general election purposes." They believe that this violates the Fifth Amendment because it creates a contribution "asymmetry." That is, plaintiffs may only contribute $2,600 to a candidate in a general election while others may functionally contribute $5,200 to a competing candidate who did not have to spend anything in a primary.

The "asymmetry" plaintiffs describe is a function of the regulations, not the Act. Section 30110 requires the district

court to "certify all questions of constitutionality *of this Act . . ..*" 52 U.S.C. § 30110 (italics added). Plaintiffs' Fifth Amendment claim is so clearly a challenge to regulations, and therefore outside the scope of § 30110, that it "fail[s] to raise a substantial federal question for jurisdictional purposes." *Shapiro*, 136 S. Ct. at 455.[9]

Plaintiffs frame their Fifth Amendment contention as a "challenge [to] the . . . timing of [the Act's] contribution limits." Their complaint and their briefs on appeal do focus on the *timing* of contributions and on candidates' ability to *transfer* campaign funds. But the Act is silent on both subjects. The Act merely sets contributions limits and applies those limits on a per-election basis. *See* 52 U.S.C. § 30116(a)(1)(A), (a)(6). Plaintiffs' objections are therefore a consequence of the Commission's regulations.

Plaintiffs try to tie the regulations to the Act by claiming that the Commission "cannot write a regulation contrary to statute." This misses the point that a regulation may be unconstitutional even if the statute it implements is not. The Commission, like other administrative agencies, has leeway in promulgating regulations to enforce statutory provisions. There may be many different ways for an agency to do this. That one such implementing regulation may be unconstitutional does not render the statute itself unconstitutional. *See Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Fed. Election Comm'n*, 333 F.3d 168, 179 (D.C. Cir. 2003). Although the district court declined to certify the Fifth Amendment issue on the ground that plaintiffs' supporting arguments contradicted settled law, we

---

[9] Complaints against Commission regulations follow the standard procedure of a filing in the district court and, after a decision on the merits or a dismissal, appeal to the court of appeals. *See, e.g.*, *Emily's List v. Fed. Election Comm'n*, 581 F.3d 1 (D.C. Cir. 2009).

reach the same result for a different reason – namely, that the issue plaintiffs raise about the Fifth Amendment is a result of regulations, not the Act.

### III

The district court's judgment declining to certify plaintiffs' Fifth Amendment question is affirmed.[10]  The district court's decision not to certify plaintiffs' First Amendment question and to grant summary judgment to the Commission is reversed and the case is remanded for the district court to certify that question to the court of appeals en banc.

*So ordered.*

---

[10] We do not reach the question whether the district court properly granted summary judgment for the Commission on plaintiffs' Fifth Amendment claim.  The only Fifth Amendment issue plaintiffs presented to us on appeal was, in their words: "Whether the District Court erred in declining to certify pursuant to 52 U.S.C. § 30110, as involving 'questions of settled law,'" the constitutional validity of the statute under the Fifth Amendment.