# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31076

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2017

Lyle W. Cayce
Clerk

FRED J. THOMPSON,

      Plaintiff - Appellee

v.

HOUSING AUTHORITY OF NEW ORLEANS; ROBERT E. ANDERSON;
GREGG FORTNER,

      Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-11856

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

PER CURIAM:*

Defendants-Appellants appeal the district court's judgment exercising *Pullman* abstention over Plaintiff-Appellee's state law claims. We affirm.

## I. Facts & Procedural History

Plaintiff-Appellee Fred Thompson was working as a law enforcement officer for Defendant-Appellant Housing Authority of New Orleans ("HANO") when the underlying events giving rise to this lawsuit occurred. According to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31076

Thompson, on February 20, 2016, he and his partner, Officer Anthony Lindsey, went to assist another officer, Edgar Baron, after hearing on the police radio that Baron had stopped a pedestrian. When Thompson and Lindsey arrived at Baron's location, they observed a black male handcuffed and seated in the back of Baron's squad car. Thompson observed that the handcuffed male was the same person he had seen a short time earlier waiting at a bus stop. Two days later, Thompson and Lindsey were approached by Sergeant Harry Stanley who told them that one of them would have to "ride," or patrol, with Baron. Thompson stated that he did not want to ride with Baron because he had a history of stopping HANO residents and violating their civil rights.[1] At that point, Stanley called his supervisor, Lieutenant Tyrone Martin, and told him that neither Thompson nor Lindsey wanted to patrol with Baron. Martin replied, "[t]hey don't have wants."

A short time later, Thompson was ordered to report to HANO's main office where he was instructed to give a written statement regarding his conversation with Stanley about riding with Baron and Baron's earlier pedestrian stop. Thompson complied and wrote out the statement. Then on February 25, 2016, Thompson received a written reprimand from Martin and Defendant-Appellant Robert Anderson pursuant to the HANO Police Department's Code of Conduct for insubordination and "conduct unbecoming to a member." Three days later on February 28, 2016, Thompson received a written "Notice of Termination" from Defendant-Appellant Gregg Fortner indicating that he could be terminated at any time because his employment with HANO was considered "probationary." The letter further provided that if Thompson failed to file a grievance letter within five business days, he would

---

[1] As a retired New Orleans police officer, Thompson claims to have knowledge that Baron was pressured into resigning from the New Orleans Police Department due to numerous complaints having been filed against him.

2

No. 16-31076

be terminated effective March 8, 2016.  The letter also stated that Thompson was on "administrative leave" and that he was to return all HANO property previously issued to him.  On March 3, 2016, Thompson filed a grievance letter as requested and a week later attended a grievance hearing with Defendants-Appellants Anderson and Fortner.  Thompson claims that he was refused whistleblower status at the grievance hearing, and a few days later, on March 14, 2016, he received written notification of his immediate termination.

On May 9, 2016, Thompson filed suit in state court against HANO, Anderson, and Fortner, asserting a variety of state and federal law claims.  In his state court pleadings, Thompson complained that he was denied civil service protections guaranteed by the State Department of Civil Service and the Police Officer's Bill of Rights as mandated by Louisiana constitutional and statutory law.  *See* La. Const. art. X, § 2; La. R.S. 40:2531, *et seq*.  He also asserted that he was denied protections guaranteed to whistleblowers under Louisiana law.  He further alleged the unconstitutionality of Louisiana Revised Statutes 40:539(C)(8)(b), which provides that HANO "shall not be considered to be an instrumentality of the state for purposes of Article X, Section 1(A) of the Constitution of Louisiana,[2] and employees of the authority shall not be included in the state civil service."  He also argued that Defendants-Appellants were liable under 42 U.S.C. §§ 1983, 1985, and 1986.  Thompson sought

---

[2] Louisiana Constitution, Article X, Section 1(A) states:

State Civil Service. The state civil service is established and includes all persons holding offices and positions of trust or employment in the employ of the state, or any instrumentality thereof, and any joint state and federal agency, joint state and parochial agency, or joint state and municipal agency, regardless of the source of the funds used to pay for such employment. It shall not include members of the state police service as provided in Part IV of this Article or persons holding offices and positions of any municipal board of health or local governmental subdivision.

3

damages, punitive damages, costs, attorney's fees and judicial interest, reinstatement as a HANO police officer, and whistleblower status. He further prayed that all HANO police officers be placed under civil service status.

On June 27, 2016, Defendants-Appellants removed the suit to federal district court and a few weeks later, Thompson moved to remand. The district court heard oral argument on the remand motion and on September 19, 2016, granted the motion in part. In its Order and Reasons, the district court first noted that it had original jurisdiction over Thompson's federal law claims under 42 U.S.C. §§ 1983, 1985, and 1986. The district court then determined that Thompson's claim that Louisiana Revised Statutes 40:539(C)(8)(b) was unconstitutional under Article X of the Louisiana Constitution was an unclear and unsettled issue of Louisiana law. Accordingly, the district court concluded that *Pullman* abstention was appropriate and remanded Thompson's state law claims. The district court retained jurisdiction over, but stayed, Thompson's federal law claims under 42 U.S.C. §§ 1983, 1985, and 1986, pending the resolution of the state law claims. This appeal ensued.

## II. Standard of Review

We review for abuse of discretion a district court's decision to abstain from exercising jurisdiction. *See Bank One, N.A. v. Boyd*, 288 F.3d 181, 183–84 (5th Cir. 2002). We review its underlying legal conclusions de novo. *Id.*

## III. Discussion

In *Railroad Commission of Texas v. Pullman Co.*, the U.S. Supreme Court directed that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009) (citation omitted). By abstaining in these types of cases, "federal courts will avoid both unnecessary adjudication of federal questions and needless friction with state policies." *Id.* (internal quotation

marks and citation omitted). "[F]or *Pullman* abstention to be appropriate . . . it must involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question." *Id.* (citation omitted). Thus, *Pullman* abstention is generally "appropriate only when there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." *Id.* (citation omitted).

Here, Thompson challenges the state constitutionality of the 2013 Amendment to La. R.S. 40:539 and, in his state court pleadings, brings federal law claims for damages pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. As the district court observed, there is no question that it has original jurisdiction over Thompson's federal law claims. Additionally, no controlling authority has yet determined whether La. R.S. 40:539(C)(8)(b) violates the Louisiana Constitution, thus, the district court properly concluded that this state law issue is unclear and unsettled. *See id.* Moreover, resolution of the state constitutional question would substantially affect the federal constitutional question by determining whether Thompson had any property interest in state employment for purposes of the due process analysis.[3]

---

[3] When *Pullman* abstention is appropriate, the district court should usually retain jurisdiction over the entire case, but stay it pending the resolution of the unclear state-law issues. 17A Charles Alan Wright et al., Federal Practice and Procedure § 4243 (West 2017); *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 655 (5th Cir. 2002). Here, the district court retained jurisdiction over Thompson's federal claims but severed his state-law claims (over which it had supplemental jurisdiction), remanding only those claims to state court. Because it is within the district court's discretion under 28 U.S.C. § 1367(c)(1) to decline to exercise supplemental jurisdiction over a claim if it raises a novel or complex issue of state law, we conclude that the district court did not err in severing and remanding the plaintiff's state-law claims.

No. 16-31076

HANO repeatedly points to the statutory language itself as unambiguously and clearly stating that HANO is not considered an "instrumentality of the state" and that HANO employees are not considered part of the state civil service. *See* La. R.S. 40:539(C)(8)(b). However, the inquiry is not whether the statute itself is clear or unambiguous but rather, whether the statute conflicts with the Louisiana Constitution. HANO also advances several cases in support of its argument that the statute is constitutional, but the cases it cites pre-date the 2013 Amendment to the statute.[4] When the district court exercised abstention in September of 2016, there was no controlling case law on the constitutionality of the 2013 Amendment to La. R.S. 40:539, and that has not changed to date.

For these reasons, we hold that the district court properly exercised *Pullman* abstention in the proceedings below.

## IV. Conclusion

The district court's judgment is AFFIRMED.

---

[4] *See McGowan v. U.S. Dep't of Hous. & Urban Dev.*, 388 F. App'x 433 (5th Cir. 2010); *Casey v. Livingston Par. Commc'ns Dist.*, No. 07-30990, 2009 WL 577756 (5th Cir. Mar. 6, 2009); *Slowinski v. Eng. Econ. & Indus. Dev. Dist.*, 828 So. 2d 520 (La. 2002); *Garcia v. Hous. Auth. of New Orleans*, No. 09–1058, (La. App. 1st Cir. Dec. 23, 2009), 2009 WL 4981281.